Vernon ADAMS, Plaintiff/Counter Defendant/Appellant,

v.

TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Defendant/Counter Plaintiff/Appellee.

Court of Appeals of Tennessee, Western Section, at Nashville.

Dec. 16, 1994.

Application for Permission to Appeal Denied by Supreme Court April 3, 1995.

Jack E. Seaman, Nashville, for plaintiff/counter defendant/appellant.

Paul Campbell, Jr., Campbell & Campbell, Chattanooga, for defendant/counter plaintiff/appellee.

FARMER, Judge.

Appellant, Vernon Adams (Adams), has appealed the trial court's judgment in the amount of $24,000 in favor of Appellee, Tennessee Farmers Mutual Insurance Company (Tennessee Farmers).

Adams married Billie Sue Dunlap (Dunlap) in 1982. Dunlap died intestate on March 15, 1987, leaving Adams, her four children, and her mother, Beatrice Milton, surviving her. Following Dunlap's death, Adams continued to live in the Coffee County house which Dunlap owned individually prior to and during their marriage.

In September of 1987, Adams completed an application to insure the house in his name through Tennessee Farmers. Adams answered the relevant questions on the application as follows:

9. Is applicant sole owner of property? YES

. . . .

EXPLAIN ALL YES ANSWERS IN "REMARKS"

14. Ever had any fire, theft, or liability losses? YES

15. Has any Company rejected, cancelled, or refused to renew? Attach copy of letter. NO

Adams explained his affirmative response to question 14 by disclosing a 1984 wood stove flue fire for which he incurred about $5,000 in damages. A policy was subsequently issued in Adams' name. In August 1990, the policy was rewritten after a visual inspection of the house was made by Tennessee Farmers' agent Brian Wheeler.

On January 12, 1991 a fire occurred in the house. Adams subsequently filed a claim with Tennessee Farmers for losses resulting from the fire. As part of his claim, Adams submitted a "Sworn Statement in Proof of Loss" in which he claimed a total of $96,000 under the policy. Adams also completed and submitted a "Personal Property Inventory" listing various items of personal property allegedly lost in the fire.

After the claim was filed, Dan Loggins, a district claim manager for Tennessee Farmers, inspected the house, and believing the fire to be of suspicious origin, requested further investigation by Tennessee Farmers' claims investigation office. Lee Brooks, a fire investigator with Tennessee Farmers, conducted an investigation of the fire. Brooks learned from Adams that he was the last person to leave the house and that he possessed the only key to the house. Adams used only one door to the house. Use of the other doors was prevented by boards placed across the door frame and nailed into the doorjamb. Brooks determined that the door was locked at the time of the fire from the fact that Adams tried to open the door with his key upon arrival at the fire.

Upon investigation of the house itself, Brooks concluded that the fire was of an incendiary origin and that an accelerant had been used. Brooks determined that a liquid accelerant had been poured on the living room floor and down a stairway leading to the only useable door. Brooks found no indication of a break-in or that the door had been disturbed. Tennessee Farmers also requested a fire investigation by Patrick Killian, an employee of INS Investigations Bureau. The burn patterns left in the charred floors and walls of the house led Killian to the conclusion that the fire was intentionally set by use of an accelerant.

During Brooks' investigation, Adams told him that the house had been insured with Tennessee Farmers as long as he had been living there and that he had never been cancelled, rejected, or not renewed by an insurance company. Brooks later learned that in fact the house had been previously insured through Insurance Company of North America (ICNA). Wayne Hudgens, an independent insurance agent, had written the ICNA policy on the house for the period of June 1984 to June 1985. After a December 1984 flue fire for which ICNA paid $4,763, Hudgens informed Adams by letter that the policy would not be renewed. Hudgens then wrote the Adamses a policy through Grangers Mutual Insurance Company for the period of June 1985 to June 1986. In August 1985, a notice of cancellation of this policy was sent to the Adamses for nonpayment of premium.

Hudgens also wrote insurance policies on the Adamses' two laundromats, including one located directly across the street from the house. These policies were written through Hartford Insurance Company and Western Casualty & Surety Company. The policies were cancelled in June and July of 1985 for nonpayment of premium. Hudgens wrote Adams an automobile insurance policy through ICNA from 1982 to 1983 and later through Western Casualty. Adams was sent a lapse notice in November 1985 that the Western Casualty policy coverage had ended and that he had 15 days to reinstate by payment of the premium. Adams failed to make the payment.

Adams also told Brooks that he had been neither sued nor brought suit against another and that there were no suits pending against him. However, Brooks learned that Beatrice Milton had filed suit against Adams on December 18, 1990 regarding the ownership of some of the furnishings in the house and on a loan related to the purchase of a

laundromat. Milton sued for an amount in excess of $30,000.[1] Brooks also discovered that on January 11, 1991, the day before the fire, the Dunlap heirs had filed suit against Adams for partition of Dunlap's estate. Adams had also been sued on two other occasions.[2] Furthermore, Brooks learned that Adams had brought suit against Hudgens and his insurance agency for failure to provide coverage and that he had filed a personal injury suit against Mrs. Billie Pangle.

After Adams submitted his Sworn Statement of Proof of Loss, he was informed by Loggins that policy coverage was doubtful because of the misrepresentations made on his application with respect to ownership of the house and previous losses. In response, Adams' attorney submitted a letter in which he attempted to explain Adams' answers in his application. His attorney admitted that in 1954 a fire had destroyed a tavern run by Adams in Chattanooga. He also stated that in 1965 Adams lost his belongings in a fire that destroyed the house which Adams was then renting. On May 29, 1991, Adams was notified that Tennessee Farmers had rejected his claim, stating that,

> We have come to the conclusion that this fire was intentionally set. Moreover, there was material misrepresentation in your application for insurance, which not only greatly increased our risk, but made the policy void from [its] inception. There was also misrepresentation in your statements given to representatives of the company concerning this fire loss. There is also indication that you overstated the value of the items claimed to have been damaged in

this loss and a fraudulent effort to extract more than the fair market value of the items damaged in violation of the terms and provisions of the policy in question.

Tennessee Farmers then notified Adams that the policy had been cancelled and returned a check in the amount of the premium.

■ On January 9, 1992, Adams and Dunlap's mother and children filed a complaint against Tennessee Farmers, alleging that it acted in bad faith in rejecting his $96,000 claim of losses.[3] Tennessee Farmers counterclaimed that Adams instituted the complaint in bad faith and was thereby liable to Tennessee Farmers for 25% of the amount claimed under the policy, or $24,000, as a penalty pursuant to T.C.A. § 56-7-106.[4] This section provides,

> In the event it is made to appear to the court or jury trying the cause that the action of the policyholder in bringing the suit was not in good faith, and recovery under the policy is not had, the policyholder shall be liable to such insurance company, corporation, firm, or person in a sum not exceeding twenty-five percent (25%) of the amount of the loss claimed under the policy; provided, that such liability, within the limits prescribed, shall, in the discretion of the court or jury trying the cause, be measured by the additional expense, loss, or injury inflicted upon the defendant by reason of the suit.

T.C.A. § 56-7-106. Tennessee Farmers moved for summary judgment on Adams' claim, arguing that Adams' misrepresentations related to ownership of the property, previous rejections and cancellations, and prior claim losses rendered the policy void

---

1. Judgment was entered against Adams in the amount of $22,682.29 on August 27, 1992.

2. The Coffee County court records indicate that two men had sued Adams and Dunlap for injuries allegedly received while doing construction work for them. Adams had also been sued on a bill in General Sessions court.

3. The complaint was based on T.C.A. § 56-7-105, which states:

> The insurance companies of this state, and foreign insurance companies ... in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has

been made by the holder of the policy ... on which the loss occurred, shall be liable to pay the holder of the policy ..., in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder of the policy ...

4. By agreed order, Tennessee Farmers' counterclaim against the Dunlap children and Beatrice Milton was dismissed after the trial court's grant of summary judgment against all Plaintiffs.

from its inception. Tennessee Farmers also argued that Adams had made fraudulent claims under the policy. The trial court granted summary judgment on Adams' complaint in favor of Tennessee Farmers.

Following a November 24, 1993 nonjury trial on Tennessee Farmers countercomplaint, judgment was entered in favor of Tennessee Farmers in the amount $24,000. The trial court ruled as follows:

> The Court is convinced that the preponderance of the proof shows that Mr. Adams's actions in bringing the suit were not in good faith. The Court is convinced that he brought the lawsuit without any investigation, falsely filled out an application, falsified facts concerning previous losses or claims, falsely claimed that he had never been sued, and the conclusion is inescapable that the fire was of incendiary origin, and that Mr. Adams started the fire.

> Therefore, the Court finds that it has been made to appear to the Court that the action of Mr. Adams, the policyholder, in bringing the suit was not in good faith, recovery under the policy having been denied previously in this cause, and therefore, that the policyholder, Mr. Adams should be liable to Tennessee Farmers Mutual Insurance Company for the sum of Twenty–Four Thousand Dollars ($24,000), this sum being measured by the additional expenses inflicted upon Tennessee Farmers Mutual Insurance Company by reason of the suit. Although the proof shows that Tennessee Farmers Mutual Insurance Company has expended in excess of the above amount, the statute only allows recovery for twenty-five percent (25%) of the amount of loss claimed.

Adams presents the following issues for review:

> I. Whether neither party can pursue a claim on a contract for insurance that has been judicially determined void ab initio.

> II. Alternatively, whether the judgment in the amount of $24,000 is not supported by the evidence of record.

Adams does not challenge the lower court's summary judgment determination that the policy was void from its inception and that, therefore, Adams could not make a claim on the policy against Tennessee Farmers. In fact, central to his argument on appeal, Adams concedes that the policy was void *ab initio* because of the material misrepresentations in his policy application. Adams insists before this court that Tennessee Farmers could not sustain this action against him under T.C.A. § 56–7–106 because there was never a valid policy between the parties. Adams asserts that if a person who makes a claim on an insurance policy is found to have made misrepresentations which void the policy, then the insurer who was made to resist and defend the claim may not proceed against him because there never was a valid policy. Adams' argument is without merit as it would render T.C.A. § 56–7–106 a nullity.

■ The right to pursue an action under T.C.A. § 56–7–106 becomes vested in the insurer at the time of the institution of the insured's action, and thus the action becomes part of the controversy. *Harrison v. National Life & Accident Ins. Co.*, 24 Tenn.App. 449, 145 S.W.2d 1023, 1024 (1940). The statute does not require that an insurance company which has been sued upon a policy resort to an independent action in its effort to show that a particular suit had been instituted in bad faith. *Id.* The trial court determined that the insurance policy issued in Adams' name was void. This determination did not preclude Tennessee Farmers from maintaining its cause of action pursuant to T.C.A. § 56–7–106 because the right to pursue this action vested when Adams filed his complaint on January 8, 1991. Having determined that Tennessee Farmers could maintain a cause of action against Adams, we cannot say that the evidence preponderates against the trial court's finding that Adams initiated this action in bad faith.

■ Adams next argues that Tennessee Farmers did not establish at trial that it was entitled to receive $24,000, the full 25% of the loss claimed, as a penalty against Adams. Tennessee Farmers offered uncontradicted proof that it had incurred $19,020.38 in dealing with Adams' claim. There was also proof that Tennessee Farmers had incurred additional legal fees and costs in the amount of

$2,778.46 as of the date of trial. According to § 56–7–106, the insurer is entitled to recover as a penalty "a sum not exceeding twenty-five percent (25%) of the amount of the loss claimed under the policy; provided, that such liability, within the limits prescribed, shall, in the discretion of the court or jury trying the cause, be measured by the additional expense, loss, or injury inflicted upon the defendant by reason of the suit." T.C.A. § 56–7–106. The statute provides a penalty ceiling of 25% of the amount claimed by the policyholder. Because Adams' complaint alleged a claim for $96,000, Tennessee Farmers was entitled to a maximum of 25% of that figure, or $24,000, as a penalty for a claim brought in bad faith. The statute provides however, that the amount awarded to the insurer is to "be measured by the additional expense, loss, or injury inflicted upon the defendant by reason of the suit." In this case, Tennessee Farmers proved a total of $21,798.84 in expenses related to the Adams claim and is entitled to recover that amount rather than $24,000 as awarded by the trial court. The judgment is modified accordingly.

Tennessee Farmers' brief discusses Rule 11 T.R.C.P. However, the relief sought by it in this Court is affirmance, dismissal of the appeal, and a determination that the appeal is frivolous. We decline to impose sanctions or to determine this appeal to be frivolous.

The judgment of the trial court is affirmed as modified. Costs are assessed to Adams, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.