RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0083p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

STATE AUTO PROPERTY AND CASUALTY INSURANCE
COMPANY,

        *Plaintiff-Appellant*,

                No. 13-5020

  *v.*

LORI HARGIS,

        *Defendant-Appellee*.

---

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 4:09-cv-00015—Joseph H. McKinley, Chief District Judge.

Argued: April 23, 2015

Decided and Filed: May 6, 2015

Before: GUY, MOORE, and McKEAGUE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Tia J. Combs, FOWLER BELL PLLC, Lexington, Kentucky, for Appellant. Michael Griffin, VANDERBILT APPELLATE LITIGATION CLINIC, Nashville, Tennessee, for Appellee. **ON BRIEF:** Tia J. Combs, Barry Miller, FOWLER BELL PLLC, Lexington, Kentucky, for Appellant. Alistair E. Newbern, VANDERBILT APPELLATE LITIGATION CLINIC, Nashville, Tennessee, Edmund Sauer, BRADLEY ARANT BOULT CUMMINGS LLP, Nashville, Tennessee, for Appellee.

---

**OPINION**

---

  RALPH B. GUY, JR., Circuit Judge. This appeal presents two related issues: (1) whether it was error for the district court to dismiss the claim asserted by the insurance company against

1

its insured for "reverse bad faith" because it has not been recognized in Kentucky (or any other jurisdiction); and (2) whether this court should certify the question of the viability of such a claim to the Kentucky Supreme Court. The insurance company in this case, State Auto Property and Casualty Insurance Company ("State Auto"), argues that the district court erred by summarily dismissing the claim without attempting to predict what the state court would do. Reviewing the legal issue *de novo*, however, State Auto has not offered a convincing basis to conclude that the Kentucky Supreme Court would adopt a common law cause of action in tort by an insurer against its insured for breach of the implied duty of good faith and fair dealing (or "reverse bad faith"). Although certification under the state court procedure is within this court's discretion, its use is disfavored when the party requesting certification does so only after an adverse judgment has been entered. For the reasons that follow, the motion for certification is denied and the district court's judgment is affirmed.

## I.

Lori Hargis's home located in Henderson, Kentucky, was insured by State Auto under a standard homeowner's policy when it burned to the ground in the early morning hours of December 9, 2007. No one was home at the time of the fire, but investigations by the Kentucky State Police and State Auto determined that the fire was intentionally set. Hargis filed what she would only later admit was a fraudulent insurance claim for approximately $866,000. State Auto paid out in excess of $425,000—including a mortgage payoff of $386,720.34—before commencing this action in state court to declare the policy void. State Auto alleged that Hargis caused or conspired to cause the fire and falsely inflated the property loss resulting from the fire in breach of the "intentional loss" and "concealment or fraud" provisions of the policy.

Hargis removed the case to federal court in early 2009, and asserted counterclaims against State Auto for breach of contract and for bad faith under the common law of Kentucky, the Kentucky Consumer Protection Act (KCPA), and the Kentucky Unfair Claims Settlement Practices Act (KUCSPA). *See* KY. STAT. ANN. §§ 367.170, 304.12-230 and 446.070. Hargis moved for partial summary judgment in her favor with respect to the competing breach of contract claims, but State Auto defeated that motion by presenting circumstantial evidence sufficient to create a genuine issue of material fact for trial on its defenses of arson and

misrepresentation. The evidence summarized in the district court's April 2010 Order included circumstantial evidence that Hargis had the opportunity and financial motive to commit the arson.

Trial would not be necessary in the end, however, because State Auto's investigation eventually led to Hargis's admission that she had solicited a friend to burn down her house to collect the insurance proceeds. Specifically, the investigation resulted in the return of a federal indictment in January 2011 that charged Hargis and Leslie Veshaun White with conspiracy to use fire to commit wire fraud in violation of 18 U.S.C. § 844(h) and (m). Hargis pleaded guilty in January 2012, and admitted during the change-of-plea hearing that she solicited White to burn down her house for $10,000 from the insurance proceeds; that she called White on the day of the fire to tell him that she and her children would be out of the house; and that she knowingly filed the fraudulent insurance claim to collect the proceeds of the homeowner's policy. Hargis was sentenced to a 60-month term of imprisonment and was ordered to pay restitution to State Auto totaling $672,497.80. The restitution ordered was the full amount sought by State Auto and consisted of: $386,720.34 for the mortgage payoff; $11,500 for debris removal; $27,994.43 for living expenses; and $195,116.70 for investigation costs and attorney fees incurred by State Auto (including $80,000 that was attributable to the defense of Hargis's bad faith claim).

As soon as the indictment was returned against Hargis, State Auto moved for partial summary judgment in its favor with respect to Hargis's bad faith claims. The district court granted that motion because "State Auto's refusal to pay Hargis's claim was at least reasonably debatable" and "[t]he indictment simply provides further support for the Court's belief." State Auto also filed an amended complaint that added a statutory claim for damages for insurance fraud under Ky. Stat. Ann. § 304-47.020(3), and a common law tort claim for reverse bad faith under Kentucky law. A stay was entered pending resolution of the criminal case, after which State Auto moved for summary judgment in its favor on all of the remaining claims. Hargis only opposed summary judgment with respect to State Auto's claim for reverse bad faith.

In a one-page order entered December 12, 2012, the district court granted in part and denied in part State Auto's motion for summary judgment. Specifically, the district court: (1) declared that State Auto had no further obligations under the policy and that the policy was

void *ab initio*; (2) awarded damages for Hargis's fraudulent insurance acts to the extent State Auto is not fully compensated by the order of restitution; and (3) rejected the claim for reverse bad faith for the reasons stated in *Houchin v. Allstate Indemnity Ins. Co.*, No. 07-cv-0071, 2012 WL 2430474 (W.D. Ky. June 26, 2012). The district court's reasoning on the last claim, as incorporated by reference, was as follows:

> Defendant argues that the Court should recognize a cause of action of reverse bad faith in the insurance context and award Defendant damages associated with Plaintiff's fraudulent claim. Defendants maintain that there is a strong public policy against allowing insureds to profit from their own wrongdoing while simultaneously subjecting insurers to inordinate increased costs for investigation, defense, and litigation. (Defendant's Motion for Summary Judgment at 15 (citing Cathryn M. Little, *Fighting Fire with Fire: "Reverse Bad Faith" In First-Party Litigation Involving Arson and Insurance Fraud* 19 Campbell L. Rev. 43, 44 (1996)).
>
> [Defendant cites] no Kentucky case that has adopted the claim by an insurer for reverse bad faith against an insured. In fact, the Court is not aware of any jurisdiction that has recognized a cause of action for reverse bad faith. *See In re Tutu Water Wells Contamination Litig.*, 78 F. Supp. 2d 436, 453 (D.V.I. 1999); *see also Tokles & Son, Inc. v. Midwestern Indem. Co.*, 605 N.E.2d 936 (1992); *First Bank of Turley v. Fidelity and Deposition Insurance Company of Maryland*, 928 P.2d 298 (Okla. 1996); *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203 (Iowa 1995). This Court likewise declines to do so.

2012 WL 2430474, at *4. Finally, after filing this appeal, State Auto asked the district court to certify to the Kentucky Supreme Court the question of "[w]hether Kentucky courts permit an insurer to make a [tort] claim against its insured based on a breach of the duty of good faith inherent in every insurance contract." The district court denied the request because there was no longer a pending claim that could be certified. State Auto has made the same motion to this court, which is opposed by Hargis.

## II.

Kentucky's procedure for certification of a question of state law may be invoked by an order of this court when the question "may be determinative of the cause then pending before the originating court and as to which it appears to the party or the originating court that there is no controlling precedent in the decisions of the Supreme Court and the Court of Appeals of [Kentucky]." KY. R. CIV. P. 76.37. Whether to utilize a state court's certification procedure is a

matter within the discretion of the court and is "most appropriate when the question is new and state law is unsettled." *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974)).

However, such certification is disfavored when it is sought only after the district court has entered an adverse judgment. This court has explained that the appropriate time for a party to seek certification of a state-law issue is before, not after, the district court has resolved the issue. *See City of Columbus, Ohio v. Hotels.com, L.P.*, 693 F.3d 642, 654 (6th Cir. 2012) (citing *Thompson v. Paul,* 547 F.3d 1055, 1065 (9th Cir. 2008) ("There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision."); *Enfield v. A.B. Chance Co.*, 228 F.3d 1245, 1255 (10th Cir. 2000) (denying certification where party did not seek certification until adverse decision and stating "[t]hat fact alone persuades us that certification is inappropriate"); *Perkins v. Clark Equip. Co., Melrose Div.*, 823 F.2d 207, 209–210 (8th Cir. 1987) (discouraging requests for certification made by a party after summary judgment has been decided against that party because "[o]therwise, the initial federal court decision will be nothing but a gamble with certification sought only after an adverse decision")).

Moreover, "the federal courts generally 'will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves.'" *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citation omitted). The state court need not have addressed the exact question, so long as well-established principles exist to govern a decision. *Id.*; *see also Transamerica*, 50 F.3d at 372. Here, the legal question is one of first impression in Kentucky, but a reasonably clear and principled course of action exists. *See Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 611 (6th Cir. 2012) (denying certification where it was "clear that the Michigan courts do not recognize the cause of action appellant urges us to adopt"). The motion for certification is denied.

**III.**

Because subject matter jurisdiction in this case is based on diversity of citizenship, the substantive law of the forum state must be applied. *Klaxon Co. v. Stentor Elec. Mfg. Co.*,

313 U.S. 487, 496 (1941); *see also Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006). When the state's highest court has not spoken on the issue, the federal court is called upon to predict what that court would do if confronted with the question. *See Berrington*, 696 F.3d at 608; *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004). Although State Auto is correct that the district court's decision was not framed strictly as a prediction, there is no question that the district court rejected State Auto's claim for reverse bad faith under Kentucky law. Moreover, our review of the district court's determination as to state law in a diversity case is *de novo*. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).

Absent controlling decisions from the Kentucky Supreme Court, "we must predict how the court would rule by looking to all the available data." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). The sources of data that may guide our determination include the decisions (or dicta) of the Kentucky Supreme Court in analogous cases, pronouncements from other Kentucky courts, restatements of law, commentaries, and decisions from other jurisdictions. *See Combs*, 354 F.3d at 577; *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995); *Bailey v. V&O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985). Without some authoritative signal from the state's legislature or judiciary, however, federal courts in diversity cases "should be extremely cautious about adopting 'substantive innovation' in state law." *Combs*, 354 F.3d at 578 (citation omitted); *see also Berrington*, 696 F.3d at 608.

Urging this court to predict the adoption of just such an innovation, State Auto relies on the Kentucky Supreme Court's general description of the common law as a "moving stream" that "seeks to purify itself as it flows through time" and the statement that, "[a]bove all else, court-made law must be just." *Hilen v. Hays*, 673 S.W.2d 713, 717, 718 (Ky. 1984) (adopting comparative fault); *see Giuliani v. Guiler*, 951 S.W.2d 318, 322-23 (Ky. 1997) (expanding common law to allow a child's claim for loss of parental consortium); *but see Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr., PSC*, 120 S.W.3d 682, 691 (Ky. 2003) (as amended) (exercising restraint in rejecting new and complex claim for wrongful birth). It is only in the most general sense that these decisions offer insight into how the Kentucky Supreme Court would go about resolving this issue of first impression. However, one recurring feature of the

Kentucky Supreme Court's decisions is its consideration of how other courts have addressed the issue.

Unable to point to any decisions in Kentucky (or elsewhere) that have recognized a common law claim for reverse bad faith, State Auto argues that there is no reason to conclude the Kentucky Supreme Court would *not* decide to allow tort recovery (*i.e.*, compensatory and punitive damages) for an insured's bad faith since the implied covenant of good faith and fair dealing imposes contractual obligations on both parties. That is, State Auto contends, it is "unjust" for Kentucky law to allow Hargis to assert a common law tort claim for bad faith without having to face the threat of a reciprocal tort claim for reverse bad faith.

Specifically, echoing arguments made in several law review articles, State Auto complains that without reverse bad faith, insureds can take a "no-risk gamble" by seeking punitive damages, while their insurers (and by extension shareholders and policyholders) bear the burden of the high investigation and defense costs associated with those claims. *See, e.g.*, Edward J. Schrenk and Jonathon B. Palmquist, *Fraud and Its Effects on the Insurance Industry*, 64 DEF. COUNS. J. 23, 30 (1997) ("Current bad faith standards appear to create a windfall for insureds."); Douglas R. Richmond, *The Two-Way Street of Insurance Good Faith: Under Construction, But Not Yet Open*, 28 LOY. U. CHI. L.J. 95, 142 (1996) ("The strongest argument for recognizing a reverse bad faith cause of action can be made where the insured commits fraud when making a claim under a first-party policy."). State Auto also relies on a law review article that offers a broad survey of the perils of common law and statutory bad faith claims and proposes, at one point, that courts recognize an insurer's limited action for reverse bad faith to recover attorney's fees for an insured's willful and malicious conduct. *See* Victor E. Schwartz and Christopher E. Appel, *Common-Sense Construction of Unfair Claims Settlement Statutes: Restoring the Good Faith in Bad Faith*, 58 AM. U. L. REV. 1477, 1507 (2009) (critiquing the arguments against reverse bad faith and commenting that the lack of case law to support it is "strikingly reminiscent of the landscape of bad-faith law only decades ago"). Whether State Auto's arguments would hold sway must be analyzed in the context of Kentucky law.

**A.　　Implied Covenant of Good Faith and Fair Dealing**

Kentucky law implies a covenant of good faith and fair dealing in all contracts that "impose on the parties thereto a duty to do everything necessary to carry them out." *Farmers Bank & Trust Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) (citing *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991)).　The covenant of good faith is an obligation owned by both parties, and breach of this covenant can be the basis of a viable breach of contract claim.　*See James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 816-17 (E.D. Ky. 2013) (citing cases).　A separate tort claim for bad faith "'arises from a violation of a duty to act in good faith that is imposed by the common law, not by the terms of the contract.'"　*Id.* at 816 (quoting *Ennes v. H&R Block E. Tax Serv., Inc.*, No. 3:01-cv-447-H, 2002 WL 226345, at *2 (W.D. Ky. Jan. 14, 2002)).

However, an independent tort claim for breach of that duty is only permitted where there is a special relationship between the parties and "where distinct elements are present, such as: unequal bargaining power, vulnerability, and trust among the parties; nonprofit motivations for contracting (e.g., peace of mind, security); and inadequacy of standard contract damages." *Ennes*, 2002 WL 226345, at *2 (citing 86 C.J.S. Torts § 5, pp. 631-32).　As one Kentucky Court of Appeals decision explained:

> Kentucky has only ever recognized a breach of the implied covenant of good faith and fair dealing as tortious (*e.g.*, as a violation of a general duty owed independently of a contract) where the situation has involved parties in a special relationship not found in ordinary commercial settings, such as between an insurer and an insured, where distinct elements are present such as unequal bargaining power, vulnerability and trust among the parties. *See Hulda Schoening Family Trust v. Powertel/Kentucky, Inc.*, 275 F.Supp.2d 793, 797-8 (W.D. Ky. 2004) (citing *Ennes*[, 2002 WL 226345, at *2-*3]).

*Atmos Energy Corp. v. Honeycutt*, Nos. 2011-CA-601/783, 2013 WL 285397, at *10 (Ky. Ct. App. Jan. 25, 2013) (unpublished decision); *see also Buridi v. Branch Banking and Trust Co.*, No. 12-cv-486-S, 2013 WL 1309763, at *6 (W.D. Ky. Mar. 25, 2013).　This undercuts State Auto's contention that the mutuality of the implied contractual obligation alone would lead the Kentucky Supreme Court to adopt a common law tort for reverse bad faith.

**B.      Bad Faith Claims**

A first-party common law bad faith tort claim was finally recognized in Kentucky in *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 178 (Ky. 1989)—overruling that Court's prior rejection of the claim in *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844 (Ky. 1986).   The Kentucky Supreme Court explained in *Curry* that the prior rejection of this claim had

> permitted an insurance carrier to deny payment without any justification, attempt unfair compromise by exploiting the policyholder's economic circumstance, and delay payment by litigation with no greater possible detriment than payment of the amount justly owed plus interest.
>
> In this society, first party insurance coverage against a host of risks is recognized as essential.  From cradle to grave individuals willingly pay premiums to insurance companies to obtain financial protection against property and personal loss.  Without a reasonable means to assure prompt and bargained-for compensation when disaster strikes, the peace of mind bought and paid for is illusory.  The rule in *Federal Kemper* is unjust and, despite its recency, should not be perpetuated.

*Curry*, 784 S.W.2d at 178.  The Court in *Curry* incorporated by reference the dissent in *Federal Kemper*, which emphasized the importance of the fiduciary relationship that existed between the insurance carrier and its insured.  *Federal Kemper*, 711 S.W.2d at 849 (Leibson, J., dissenting).  Thus, the Kentucky Supreme Court relied on the special relationship between an insurer and its insured, and identified the kind of distinct elements that are recognized as giving rise to an independent tort claim for bad faith.

In all, Kentucky recognizes four categories of bad faith claims that may be brought against an insurance company:  two common law tort theories for an insurer's breach of the duty of good faith (first-party and assignment to a third-party); and two statutory causes of action premised on an insurer's violation of either the Kentucky Consumer Protection Act (KCPA) or the Kentucky Unfair Claims Settlement Practices Act (KUCSPA).  *See Rawe*, 462 F.3d at 526-27; *Motorist Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 451-52 (Ky. 1997) (discussing development of bad faith law in Kentucky).  A single standard applies to all four categories of bad faith claims, which requires that the insured prove three elements:

"(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed[.]"

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (quoting *Federal Kemper*, 711 S.W.2d at 846-47 (Leibson, J., dissenting)); *see also Rawe*, 462 F.3d at 527. At a minimum, an insurer that has no obligation to pay under the policy also defeats a claim for bad faith. In addition, the other elements further raise the bar for an insured to prove bad faith under Kentucky law.

Tellingly, the Kentucky Supreme Court has rejected an insurance company's challenge to the fact that the KUCSPA affords rights and remedies to an insured but provides no reciprocal rights or remedies to insurers. *See Farmland Mutual Ins. Co. v. Johnson*, 36 S.W.2d 368, 379-80 (Ky. 2000), *as modified* (Feb. 22, 2001). Although *Johnson* involved a challenge to a statutory bad faith claim, the KUCSPA creates both first- and third-party obligations for insurers to settle insurance claims in good faith and identifies specific acts to be unfair claims settlement practices. *See Rawe*, 462 F.3d at 532 (citing *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 515 (Ky. 2006)). The Court in *Johnson* upheld the KUCSPA, explaining:

> Insofar as the exclusion of the insureds from the scope of KUCSPA is concerned, the legislative decision to exclude the insured from the class is reasonable and natural. One reason for this distinction is that the insured is not in the insurance business. A second reason is that a bad faith action is based upon the fiduciary duty owed by an insurance company to its insured based upon the insurance contract. The KUCSPA is designed to "protect the public from unfair trade practices and fraud." Furthermore, the disparate bargaining positions of an insured and an insurer following a loss are sufficient to justify treating the insureds as a different class for purposes of inclusion within the scope of the act.

36 S.W.3d at 380 (footnotes omitted). This indicates a willingness to conclude in a related context that insureds are in need of protection that insurers are not.[1]

---

[1]Hargis also points to a decision in which the Kentucky Supreme Court declined to extend bad faith claims to the settlement practices of self-insured or uninsured defendants. *See Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 95 (Ky. 2000). However, the decision in that case rested primarily on the fact that there was no contract of insurance that could be breached and held that the KUSCPA and common law tort bad faith applied only to those who are in the business of entering into contracts of insurance. *Id*. at 100-02.

**C.     Other Jurisdictions**

A common law tort claim for reverse bad faith has not been recognized in any jurisdiction, although it is true that only a handful of jurisdictions have addressed the issue. In the most succinct of the explanations from those cases, the Ohio Supreme Court refused to recognize a claim for reverse bad faith where the insured made a fraudulent claim and then sued in tort alleging bad faith in the refusal to pay. The Court in *Tokles & Sons* explained:

> This court has never recognized such a tort and refuses to do so now. As the holder of the purse strings, the insurer has a certain built-in protection from such evils. On the other hand, the insured, who often finds himself in dire financial straits after the loss, must have the equal footing which is provided by the ability to sue the insurer for bad faith. There are other avenues for the insurer to pursue in the event that an insured submits a fraudulent claim. An insurer drafts the policy, can refuse the insured's claim, and could assert a cause of action against the insured for fraud.

*Tokles & Son, Inc. v. Midwestern Indem. Co*, 605 N.E.2d 936, 945 (Ohio 1992). These reasons are consistent with the rationale articulated by the Kentucky Supreme Court in recognizing common law bad faith.

The Iowa Supreme Court in *Johnson* also declined to adopt the tort of reverse bad faith, despite its acknowledgement that: "Some commentators have begun to discuss possible adoption of a reverse bad faith cause of action." *See Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 208 (Iowa 1995) (citing law review articles). There, the Court emphasized that insurers were not without a remedy because they could seek sanctions under the court rules for the filing of a frivolous claim. *Id.* Also, in *First Bank of Turley*, the Oklahoma Supreme Court rejected a reverse bad faith claim based on the insured's *non*feasance. *See First Bank of Turley v. Fidelity and Deposit Ins. Co. of Md.*, 928 P.2d 298, 308 (Okla. 1996). But, as State Auto emphasizes, the Court in *Turley* added that it expressed no opinion whether an insured's *mal*feasance could constitute a tort or call for consideration of contributory fault in the bad faith action against the insurer. *Id.* at 308 n. 39.

Finally, the California Court of Appeals held in *Agricultural Insurance* that: "An insurer has no claim against its insured in tort for breach of the covenant of good faith and fair dealing." *Agricultural Ins. Co. v. Superior Court*, 82 Cal.Rptr.2d 594, 595 (Cal. Ct. App. 1999) (cited with

approval in *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 2 P.3d 1, 12 (Cal. 2000) (rejecting comparative bad faith defense)).  The court in *Agricultural Insurance* explained:

> A relationship including specialized circumstances of reliance and dependence is necessary to transmute such a contractual breach into a tort.  Such circumstances do not exist in the context of an insured's responsibilities toward its insurer, or in the reciprocal context of an insurer's legitimate expectations from its insured.  Although a false claim by an insured might trigger adverse contractual or penal consequences, the obligation undertaken by an insured in entering into an insurance contract are simply not of the same character as the obligations undertaken by an insurer.  Hence an insured does not bear a risk of affirmative tort liability for failing to perform the panoply of indefinite but fiduciary-like obligations contained within the concept of "insurance bad faith."

*Id*. at 595-96; *see also In re Tutu Water Wells Contamination Litigation*, 78 F. Supp.2d 436, 452 (D. V.I. 1999) ("Thus, the mere assertion by Cigna that the insured shares a similar contractual duty of good faith, without more, necessarily fails to rise to the 'exceptional' level required for imposition of tort liability.").  The court in *Agricultural Insurance* nonetheless reversed and remanded to allow the insurer to plead a cause of action for fraud because "an insured—no different than everyone else—has a duty not to defraud."  82 Cal. Rptr. 2d at 596.[2]

## D.      Final Considerations

State Auto repeatedly returns to the theme that it is "unjust" for Kentucky law to allow Hargis to escape the consequences of her intentionally fraudulent conduct.  But, she plainly did not.  Her fraudulent conduct resulted in a civil judgment against her for all of the damages incurred by State Auto and subjected her to incarceration and an order of restitution to State Auto.  The criminal conviction simplified State Auto's proofs by establishing both breach of contract and the statutory claim for insurance fraud.  *See* KY. STAT. ANN. § 304.12-020(3) (providing a cause of action for compensatory damages and all reasonable investigation and litigation expenses, including attorney fees, for certain fraudulent insurance acts).  Further, even if the prosecution had not gone forward, there is no suggestion that State Auto could not have

---

[2]Tennessee has adopted a limited statutory reverse bad faith claim found in Tenn. Code Ann. § 56-7-106, which provides that a policyholder shall be liable to an insurance company for a sum not to exceed 25% of the amount of loss claimed if "it is made to appear to the court or jury trying the cause that the action of the policyholder in bringing the suit was not in good faith, and recovery under the policy is not had[.]"  *See also Adams v. Tenn. Farmers Mut. Ins. Co.*, 898 S.W.2d 216, 219-20 (Tenn. Ct. App. 1994).  Kentucky has not enacted similar legislation.

brought a common law claim for fraud. *See Gibson v. Ky. Farm Bureau Mut. Ins. Co.,* 328 S.W.3d 195, 203-05 (Ky. Ct. App. 2010). Finally, to the extent that State Auto claims that the threat of punitive damages is necessary to deter such fraudulent conduct, it is hard to imagine that a possible claim for reverse bad faith would be a deterrent if the threat of criminal prosecution was not.

## IV.

Considering the reasons articulated by the Kentucky Supreme Court in recognizing first-party common law bad faith in *Curry*, the rejection of the challenge to the KUCSPA in *Johnson*, the standards for proving a claim of bad faith articulated in *Wittmer*, the availability of other remedies for the damages incurred as a result of an insured's fraud under Kentucky law, and the absence of support in other jurisdictions for reverse bad faith, we predict that the Kentucky Supreme Court would reject State Auto's invitation to adopt a common law tort claim for reverse bad faith by an insured. The motion for certification is **DENIED** and the judgment of the district court is **AFFIRMED**.