**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 20a0004n.06

Case No. 19-3035

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 06, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MURRAY RICHELSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| LIBERTY INSURANCE CORPORATION, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: BATCHELDER, DONALD, and READLER, Circuit Judges

**CHAD A. READLER, Circuit Judge.** When interpreting policy language in an insurance contract, Ohio courts will construe ambiguous language against the insurer and in favor of the insured. *See Andersen v. Highland House Co.*, 757 N.E.2d 329, 332 (Ohio 2001). That interpretive practice seeks to encourage the drafter—typically the insurer, often the more experienced party—to be as clear as possible in the contractual language it utilizes. By the same token, where an insurer has utilized contract language that is clear and unambiguous, Ohio courts will construe that language by giving it its ordinary and plain meaning. *See Ohio N. Univ. v. Charles Constr. Servs., Inc.*, 120 N.E.3d 762, 766 (Ohio 2018). This latter principle resolves today's case. Murray Richelson entered into an insurance contract with Liberty Insurance. Richelson purports not to have read, at the time of signing, language in that contract that is now in dispute and today reads that language differently than does Liberty. But that language is subject to only one

interpretation—the one given it by Liberty. Accordingly, we **AFFIRM** the district court's grant of Liberty's motion to dismiss Richelson's breach-of-contract and fraud claims.

## I.        FACTS AND PROCEDURAL HISTORY

A windstorm caused damage to the roof of Murray Richelson's home. Citing that storm damage, Richelson filed a claim with Liberty Insurance, from whom Richelson had purchased a homeowner's insurance policy. An adjustor determined that the cost to replace the roof was $8,960. But Liberty declined to pay Richelson the replacement cost. Liberty instead paid Richelson the amount of the roof's actual cash value, or "ACV." Liberty determined the ACV amount by applying the policy's $1,000 deductible and deducting depreciation from the replacement cost amount. All told, Liberty reimbursed Richelson $4,350.58, less than half of the cost to replace the roof. This led to a dispute regarding the terms of Richelson's policy.

Section 1 of Richelson's policy addresses "A. Dwelling with Expanded Replacement Cost." There, the policy states that "[l]osses covered under Section 1 are subject to a deductible of: $1,000."

Insurance policies also sometimes include "endorsements." Generally speaking, an endorsement is an amendment to an insurance contract which impacts the scope of coverage of the policy in some way. *See Endorsement*, *Black's Law Dictionary* (9th ed. 2009). Relevant here is an endorsement to Richelson's homeowner's policy numbered FMHO 3325 03 12. In large upper-case font, the endorsement reads: "THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY." Below that, in equally large upper-case font, this time also in bold, the endorsement addresses: **"ACTUAL CASH VALUE LOSS SETTLEMENT WINDSTORM OR HAIL LOSSES TO ROOF SURFACING."** The endorsement provides that losses to "[b]uildings under Coverage A or B, except for their roof surfacing, roof vents and

roof flashing materials if the loss to the roof surfacing, roof vents and roof flashing materials is caused by the peril of Windstorm or Hail, [is] at replacement cost without deduction for depreciation . . . ." The endorsement also sets forth the coverage that applies in such situations. Claims for losses to "[r]oof surfacing, roof vents and roof flashing materials if the loss is caused by the peril of Windstorm or Hail" are settled "at actual cash value at the time of the loss but not more than the amount required to repair or replace."

Challenging Liberty's reading and application of the endorsement, Richelson filed in state court a class action complaint against Liberty. Because Richelson was an Ohio resident, and Liberty a Massachusetts corporation with its principal place of business in Massachusetts, there was diversity between them. That, and the fact that the total damages sought in the case exceeded $5 million, allowed Liberty to remove the case to federal court under the Class Action Fairness Act. *See* 28 U.S.C § 1332 (d)(2).

In the class action, Richelson sought to represent two distinct classes of Liberty policyholders: (1) Homeowners in Ohio with an ACV roof endorsement who filed claims with Liberty after their homes suffered damage and who, as a result of the endorsement, were paid ACV rather than replacement costs; and (2) Owners of Ohio homes who filed claims with Liberty on a home insurance policy with the same LibertyGuard Endorsement, or an endorsement with the same loss settlement provisions as the LibertyGuard Endorsement, who suffered a loss under Buildings Coverage A or B for which they were paid ACV, after application of a $1,000 deductible. In addition to pursuing those claims, Richelson also alleged that the language in the policy declarations led him justifiably to believe that the ACF/roof endorsement expanded, as opposed to diminished, the extent of his coverage, that Liberty included such misleading terms with an intent

to mislead Richelson, and that Richelson was thus fraudulently induced by Liberty to enter into the insurance contract.

Liberty moved under Federal Rule of Civil Procedure 12 (b)(6) to dismiss the case. With respect to Richelson's "ACV" breach-of-contract claim, the district court rejected as unreasonable Richelson's interpretation that the policy endorsement provided an extra layer of coverage rather than explaining an exception to the replacement-cost general rule. Rather, Richelson's coverage (as relevant here) was limited to ACV only. Accordingly, the district court concluded, Richelson's claim failed as a matter of law.

The district court held the same with respect to Richelson's "deductible" breach-of-contract claim. Richelson conceded that his roof claim was a Section 1 claim. The district court in turn concluded that the language in Richelson's policy plainly declared that a $1,000 deductible is applicable to Section 1 claims. The district court rejected Richelson's argument that the deductible was not part of any calculation except the replacement-cost calculation. That interpretation was unreasonable, the district court concluded, first because it misunderstood the meaning of the term "deductible," and also because it made the deductible language superfluous for three of the four Section 1 coverages.

The district court likewise dismissed Richelson's fraud claim. The heading "additional coverages," which Liberty placed above the ACV/roof endorsement section of the policy, was not misleading, the district court reasoned, when read in the context of the contract as a whole. Nor, the district court added, would the endorsement have gone unnoticed by a reasonable person, given the size of the bolded text used to highlight its importance.

## II.     ANALYSIS

We begin with the framework guiding our review.  As an initial matter, the district court correctly considered the terms of the insurance contract because it was attached to, and thus became part of, the pleadings.  *See Comm. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)).  In evaluating a district court's grant of a motion to dismiss, we assume the plaintiff's version of the facts to be true, *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019), and we review de novo the district court's decision to dismiss the complaint.  *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017).  With respect to the district court's legal conclusions, because the parties have invoked diversity jurisdiction as the basis for proceeding in federal court, we view the substantive legal issues before us through the lens of state law.  *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015).  In this case, we apply the substantive state law of Ohio, as this case turns on an insurance contract governed by Ohio law.  To measure the substantive aspects of Ohio law, we look to relevant decisions from the Ohio Supreme Court.  *See id.*  In their absence, decisions from Ohio's intermediate appellate courts can help set that legal framework.  *Id.*

### A.   Richelson Failed To State A Claim For Breach Of Contract.

Richelson's complaint asserts two breach-of-contract theories against Liberty.  Primarily, Richelson argues that Liberty breached the parties' insurance contract by utilizing ACV, rather than replacement cost, in assessing the payment amount owed to Richelson for the windstorm damage to his roof.  Alternatively, if ACV was in fact the proper method for determining the payment amount, Richelson says that Liberty nonetheless breached the contract by factoring in a deductible in the calculation for ACV.

The basic elements of a breach of contract under Ohio law are "the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018). In assessing whether a breach of an insurance contract has occurred, we must "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003) (citation omitted). And we interpret the words of the contract "according to their plain meaning." *Boone Coleman Constr., Inc. v. Piketon*, 50 N.E.3d 502, 515 (Ohio 2016). That said, as we find ourselves at the motion-to-dismiss stage, our task is not to decide which of the parties' competing views has more merit. Instead, we ask whether Richelson has put forward a reasonable interpretation of the insurance policy. If so, we must reverse the district court and allow the suit to proceed. *Andersen*, 757 N.E.2d at 332.

1. *Richelson Cannot State A Claim For Breach Of Contract Because Of Liberty's Paying Him ACV For His Roof Damage.*

Richelson's first argument turns on the interplay between a policy declaration and a related endorsement in his homeowner's insurance policy. The relevant policy declaration states that Richelson would have coverage for "A. Dwelling with Expanded Replacement Cost." A relevant endorsement—FMHO 3325 03 12—spoke to the same subject. It states that payments for losses to "Buildings under Coverage A or B, except for their roof surfacing, roof vents and roof flashing materials if the loss to the roof surfacing, roof vents and roof flashing materials is caused by the peril of Windstorm or Hail, [is] at replacement cost without deduction for depreciation . . . ." Parsing that lengthy sentence, the endorsement explains that the standard coverage for "Buildings under Coverage A or B" is "replacement cost without deduction for depreciation." But the endorsement exempts from that standard coverage the very circumstance at issue here: coverage

for "roof surfacing, roof vents, and roof flashing materials if the loss to the roof surfacing, roof vents and roof flashing materials is caused by the peril of Windstorm or Hail." That plain language, in other words, sets forth an exception to replacement-cost coverage for windstorm damage like that experienced by Richelson. The endorsement, it bears adding, then goes on to explain how those incidents are treated. Claims for losses to "[r]oof surfacing, roof vents and roof flashing materials if the loss is caused by the peril of Windstorm or Hail" are settled "at actual cash value at the time of the loss but not more than the amount required to repair or replace."

Taking the language of the policy declaration and the endorsement together, the only reasonable interpretation is that the amount of Richelson's claim for reimbursement for roof damage caused by a windstorm is calculated by utilizing the ACV—not the replacement cost—of the roof. Put another way, Richelson's windstorm-based claim was governed not by the general rule (replacement cost), but rather by an express exception to that rule (ACV for roof damage caused by hail or wind). For the roof-damages portion of Richelson's claim, then, Liberty was required to pay ACV.

Resisting that conclusion, Richelson asks us to elevate the language in the policy declarations over that in the endorsement. But Ohio law understandably requires that we "examine the insurance contract as a whole," giving meaning to each of its parts. *Westfield Ins.*, 797 N.E.2d at 1261 (citation omitted). It may be, as Richelson contends, that some state courts find an insurance contract's policy declarations to be the most important part of the policy. Setting aside the fact that such a preferential interpretive rule would require discounting certain plain language in an agreement, the fact remains that Ohio has not adopted such a rule, to our knowledge. Under Ohio law, where we must give fair meaning to all language in the contract, Richelson's

interpretation of the ACV-related provision is not reasonable. Accordingly, he has not alleged a viable theory of breach by Liberty. *See Andersen*, 757 N.E.2d at 332.

   2. *Richelson Cannot State A Claim For Breach Of Contract Because Of Liberty's Including A Deductible In Its Settlement Calculations.*

Even assuming ACV governs the payment amount owed to Richelson, he argues that Liberty should not have included a $1,000 deductible when it calculated the settlement amount owed to him for his roof damage. The parties agree that, under the policy, Richelson's roof claim is a "Section 1" claim. Turning then to the plain language of the policy, *Boone Coleman Constr.*, 50 N.E.3d at 515, we note that the declarations page provides that "[l]osses covered under Section 1 are subject to a deductible of: $1,000." So unless there is language elsewhere in the policy that excludes ACV claims from the Section-1-deductible language, Richelson's claim was properly subject to the deductible.

Richelson attempts to show such an exclusion. He starts by citing contractual language addressing how the deductible applies when calculating a replacement-cost settlement. He then contrasts that more robust discussion with the lack of comparable language in any section discussing deductibles in ACV settlements. Relying on the familiar maxim of "*expressio unius est exclusio alterius*," which means expressing one item of an associated group or series excludes others left unmentioned, Richelson argues that this omission in the ACV section somehow undermines the otherwise straight-forward language in the policy declarations.

We disagree. Section 1 ACV claims are explicitly subject to a $1,000 deductible. Richelson has not cited language to the contrary. Nothing in any policy declaration or endorsement exempts settlements relating to roof damage covered under the ACV/roof endorsement from the $1000 deductible. Richelson has not cited relevant language to that effect. Instead, he cites two cases he reads to stand for the proposition that we should read the ACV deductible language by

incorporating language not found in that part of the agreement. Those cases are *Bond v. Liberty Ins. Corp.*, 272 F. Supp. 3d 1112 (W.D. Mo. 2017), and *Lafollette v. Liberty Mut. Fire Ins. Co.*, 139 F. Supp. 3d 1017 (W.D. Mo. 2015). The contracts at issue in those cases, however, utilized different language than today's contract. And they were governed by Missouri law. Those cases thus offer little guidance in interpreting different language of a different contract, measured under a different state's law. Honoring the plain language in Richelson's agreement, we reject this breach claim as well.

## B. Richelson Failed To State A Claim For Fraud.

Failing to offer a reasonable reading of the policy language, Richelson alternatively argues that the policy language is so misleading that he was fraudulently induced into signing the contract. Under Ohio law, a plaintiff asserting a fraud-based claim must prove six elements: (1) "a representation of a fact," (2) "which is material," (3) made either knowingly or recklessly falsely, (4) "with an intent to mislead," (5) "with justifiable reliance thereupon," and (6) "a resulting injury." *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 605 N.E.2d 936, 944 (Ohio 1992) (citation omitted); *see also Brownfield Restoration Grp., LLC v. Trickett*, 122 N.E.3d 570, 577 (Ohio Ct. App. 2018) (listing these same elements for fraudulent-inducement claims). For Richelson to succeed, he must plausibly allege each element. *CitiMortgage, Inc. v. Hoge*, 962 N.E.2d 327, 333 (Ohio Ct. App. 2011).

We can resolve Richelson's fraud claim based solely on his failure to plausibly allege justifiable reliance. The gist of his argument seems to be that because, in his mind, the policy language requiring replacement-value coverage is so clear, a reasonable person, rather than reading the entire policy, would instead have justifiably relied upon that replacement-value-coverage language, and thus would never have expected the insurer to invoke language in an endorsement

that changed the nature of that coverage. Whatever the outer limits of a viable claim of justifiable reliance, one cannot justifiably rely on a purportedly unclear statement in a contract when reading the contract in full would remove any lack of clarity. *See Haller v. Borror Corp.*, 552 N.E.2d 207, 210 (Ohio 1990). Put another way, Richelson "cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed." *Id.*

As already discussed, Richelson's policy plainly stated that the kind of roof damage he experienced was covered under the ACV/roof endorsement. Yes, as Richelson notes, that endorsement was listed under "Additional Coverages." But reading the contract in full reveals that such coverage is not a top-up to other coverages, as Richelson suggests, but rather the identification of an exception to previous coverage descriptions. Nor could the endorsement have been made more apparent. At the top of the page, in large upper-case font, the endorsement provides "THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY." Below that, in bold and equally large upper-case font, the endorsement sets forth "**ACTUAL CASH VALUE LOSS SETTLEMENT WINDSTORM OR HAIL LOSSES TO ROOF SURFACING.**" If Liberty was trying to hide the endorsement ball, as Richelson suggests, it did quite a poor job.

The need to review the endorsement language was eminently clear to a reasonable reader. That is enough to doom Richelson's fraud claim. The district court thus properly dismissed Richelson's fraud claim.

### III.    CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.

10