RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0073p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

IN RE: AMAZON.COM, INC., FULFILLMENT CENTER FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION.

_____

TINA VANCE and AARON VANCE, on behalf of themselves and all others similarly situated,

　　　　　　　　　　*Plaintiffs-Appellants*,


　　　*v.*


AMAZON.COM, INC.; AMAZON.COM.KYDC, INC.; AMAZON.COM.KYDC, LLC; ZAPPOS.COM, INC.; ZAPPOS FULFILLMENT CENTERS, INC.; KELLY SERVICES, INC.,

　　　　　　　　　　*Defendants-Appellees*.

No. 16-5533

---

Appeal from the United States District Court for
the Western District of Kentucky at Louisville.
Nos. 3:13-cv-00765; 3:14-md-02504—David J. Hale, District Judge.

Argued: December 7, 2016

Decided and Filed: March 31, 2017

Before: SILER, BATCHELDER, and GRIFFIN, Circuit Judges.

---

## COUNSEL

**ARGUED:** David W. Garrison, BARRETT JOHNSTON MARTIN & GARRISON, LLC, Nashville, Tennessee, for Appellants. Richard G. Rosenblatt, MORGAN LEWIS & BOCKIUS LLP, Princeton, New Jersey, for Amazon Appellees. Gerald L. Maatman, Jr., SEYFARTH SHAW LLP, Chicago, Illinois, for Appellee Kelly Services. **ON BRIEF:** David W. Garrison, Jerry E. Martin, Scott P. Tift, Seth M. Hyatt, BARRETT JOHNSTON MARTIN & GARRISON, LLC, Nashville, Tennessee, David O. Suetholz, KIRCHER, SUETHOLZ & GRAYSON, PSC, Louisville, Kentucky, J. Chris Sanders, CHRIS SANDERS LAW, PLLC, Louisville, Kentucky,

for Appellants. Richard G. Rosenblatt, MORGAN LEWIS & BOCKIUS LLP, Princeton, New Jersey, Kathryn A. Quesenberry, DINSMORE & SHOHL LLP, Louisville, Kentucky, for Amazon Appellees. Gerald L. Maatman, Jr., Rebecca P. DeGroff, SEYFARTH SHAW LLP, Chicago, Illinois, for Appellee Kelly Services.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge. In *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014), the Supreme Court held that post-shift security screening is a noncompensable postliminary activity under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, as amended by the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq. See id.* at 518–19. At issue here is whether *Integrity Staffing* resolves a similar claim under the Kentucky Wages and Hours Act (KWHA), Ky. Rev. Stat. § 337.285. Because we conclude the Kentucky Supreme Court would apply *Integrity Staffing* to the state's wage and hour law, we affirm the district court's dismissal of plaintiffs' KWHA claims.

I.

Online retailers Amazon.com, Amazon.com.KYDC, Inc., Amazon.com.KYDC, LLC, Zappos.com, and Zappos Fulfillment Centers (collectively, "Amazon") operate a warehouse fulfillment center in Shepherdsville, Kentucky, where hourly workers fill orders, track merchandise, and process returns. Plaintiffs Tina and Aaron Vance began working at the center in 2012—Tina as an employee of Amazon, and Aaron as a joint employee of Amazon and staffing agency Kelly Services. Both regularly worked at least forty hours a week. Amazon tracked the Vances' hours with a "time clock" system; employees "clocked in" at the beginning of their shifts, and "clocked out" at the end of the workday.

However, before permitting "clocked out" employees to leave, Amazon required them to —in plaintiffs' words—"proceed through a lengthy theft-prevention security screening operation." Workers passed through a metal detector while security guards "inspect[ed] any bags or personal items" they intended to take home. If an employee set off the metal detector, the guard "search[ed]" him or her further "using a metal detecting wand." "This mandatory,

post-shift theft-prevention screening" took anywhere from 10 to 30 minutes. Defendants never paid Tina or Aaron overtime compensation for the time they spent undergoing the post-shift security screening—"a required job activity," designed "solely to benefit Defendants."

## II.

The Vances filed the present action against Amazon and Kelly Services in 2013, alleging that such nonpayment violates the Fair Labor Standards Act and its state-law counterpart, the Kentucky Wages and Hours Act. Plaintiffs were not the only employees who disputed Amazon's practices. By early 2014, the Vances' case was one "of five related actions" pending in district courts across the country. Each involved similar allegations: "that Amazon.com and various staffing agencies violate federal and state wage and hour laws by requiring workers . . . to pass through lengthy anti-theft security screening after clocking out . . . without compensation for that time."

The United States Judicial Panel on Multidistrict Litigation transferred the actions to the Western District of Kentucky for consolidation. Recognizing the Supreme Court already granted certiorari in *Integrity Staffing*, the district court stayed the other four cases pending the Court's decision.

The *Integrity Staffing* Court determined the security screenings were noncompensable under the Portal-to-Portal Act. 135 S. Ct. at 518. Enacted as an amendment to the FLSA, the Portal-to-Portal Act "narrowed the coverage of the [Act]" by excluding certain "preliminary" and "postliminary" activities from the FLSA's compensation requirements. *See IBP, Inc. v. Alvarez,* 546 U.S. 21, 27 (2005). *Integrity Staffing* clarified that post-shift security screenings are among those noncompensable, "postliminary" activities. 135 S. Ct. at 518.

In view of the Court's ruling, the Vances withdrew their FLSA claims. They maintained, however, that *Integrity Staffing* did not foreclose their claim to overtime under the KWHA for two reasons. "First," plaintiffs explained, *Integrity Staffing* "was **not** an FLSA decision but rather a Portal-to-Portal Act decision. . . . Second, Kentucky has never enacted a Portal-to-Portal Act of its own and the KWHA contains no comparable exclusions from coverage." (Emphasis in original.)

In granting defendants' motions for judgment on the pleadings, the district court rejected both arguments. "The main problem with the plaintiffs' position," it wrote, "is that they treat the Portal-to-Portal Act as separate and distinct from the FLSA. Yet the Portal-to-Portal Act *amended* the FLSA. . . . It does not alter the FLSA's construct or make substantive changes to the FLSA's concepts about work, overtime, or the like. It simply clarifies that some activities do not count as 'work.'" And while "Kentucky's laws do not contain Portal-to-Portal language," the Kentucky Supreme Court refers to federal law in construing the KWHA. Given that "Kentucky looks to federal law to determine what *is* work under its wage and hour laws," the district court concluded that Kentucky courts would find "federal law explaining what is *not* work" equally persuasive. Accordingly, the court applied *Integrity Staffing* to plaintiffs' state-law claims, and granted defendants judgment on the pleadings. Plaintiffs timely appealed.

III.

At the outset, plaintiffs suggest that we certify the question at issue here—whether the KWHA incorporates the Portal-to-Portal Act—to the Kentucky Supreme Court before resolving their appeal.

Certification to a state supreme court "is most appropriate when the question is new and state law is unsettled," as the parties agree it is here. *City of Columbus v. Hotels.com, L.P.*, 693 F.3d 642, 654 (6th Cir. 2012) (citation omitted). But the appropriate time to request certification of a state-law issue "is before, not after, the district court has resolved [it]." *State Auto Property and Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015). "[O]therwise, the initial federal court decision will be nothing but a gamble with certification sought only after an adverse decision." *Id.* (citing and quoting *Perkins v. Clark Equip. Co. Melrose Div.*, 823 F.2d 207, 209–10 (8th Cir. 1987)). Moreover, we are not inclined to "trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citation omitted). "When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Id.* (citation omitted). That course is most appropriate here, where the Vances chose to file in federal court and "seek refuge" in state court only after an unfavorable ruling. *Hotels.com*, 639 F.3d at 654 (citation and alterations omitted).

"The state court need not have addressed the exact question, so long as well-established principles exist to govern a decision." *Hargis*, 785 F.3d at 194. Here, we have at least those principles in the form of state supreme court and court of appeals decisions, and the KWHA's implementing regulations. We therefore deny plaintiffs' late request for certification.

IV.

We review a district court's grant of judgment on the pleadings under Federal Rule of Civil Procedure 12(c) using the same de novo standard applicable to orders of dismissal under Rule 12(b)(6). *Wurzelbacher v. Jones-Kelly*, 675 F.3d 580, 583 (6th Cir. 2012). A Rule 12(c) motion is properly granted where, accepting all the well-pleaded allegations as true, "the moving party is nevertheless clearly entitled to judgment." *Id.* (citation omitted). In this case, we determine whether Amazon and Kelly Services are "clearly entitled to judgment" on the Vances' claim to overtime under the Kentucky Wages and Hours Act. The parties agree that the development of the FLSA, the Portal-to-Portal Act, and the holding of *Integrity Staffing* provide the relevant background for our decision.

A.

"Enacted in 1938, the FLSA established a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek." *Integrity Staffing*, 135 S. Ct. at 516. "The Act did not, however, define the key terms 'work' and 'workweek.'" *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 875 (2014). Absent congressional guidance, the Supreme Court interpreted these terms broadly. *Integrity Staffing*, 135 S. Ct. at 516. "It defined 'work' as 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Id.* (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)). Only months after *Tennessee Coal*, the Court expanded the definition further, "clarif[ying] that 'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA," for "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *IBP*, 546 U.S. at 25 (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)).

"Readiness to serve may be hired, quite as much as service itself," and must therefore also be compensated. *Armour*, 323 U.S. at 133.

The Court took a similar approach with "the statutory workweek," which "include[d] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–91 (1946). "That period, *Anderson* explained, encompassed time spent 'pursuing certain preliminary activities after arriving, such as putting on aprons and overalls and removing shirts.'" *Sandifer*, 134 S. Ct. at 875 (quoting *Anderson*, 328 U.S. at 692–93) (ellipsis and brackets omitted). Per *Anderson*, these preparatory efforts "'are clearly work' under the Act." *Id.* (quoting *Anderson*, 328 U.S. at 693).

Together, these holdings led to decisions requiring compensation for nearly every minute an employer required its employees to be on the employer's premises, including "the time spent traveling between mine portals and underground work areas," and "walking from timeclocks to work benches." *Integrity Staffing*, 135 S. Ct. at 516 (citing *Tenn. Coal*, 321 U.S. at 598, and *Anderson*, 328 U.S. at 691–92). They also "provoked a flood of litigation," including 1,500 FLSA actions filed within six months of the Court's ruling in *Anderson*. *Id.*

"Congress responded swiftly." *Id.* Finding the Court's decisions had "creat[ed] wholly unexpected liabilities" with the capacity to "bring about financial ruin of many employers," it enacted the Portal-to-Portal Act of 1947. *Id.* at 516–17 (quoting 29 U.S.C. § 251(a)–(b)). The Act excepted two activities the Court previously deemed compensable: "walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are 'preliminary or postliminary' to that principal activity." *IBP*, 546 U.S. at 27; *see also Integrity Staffing*, 135 S. Ct. at 516–17 (detailing history). Under the Portal-to-Portal Act then, an employee's principal activities are compensable, while conduct he engages in before and after those activities (i.e., preliminary and postliminary acts) is not.

"[P]rincipal activity" refers to the activity "an employee is employed to perform." *Integrity Staffing*, 135 S. Ct. at 517, 519. "[T]he term principal activity . . . embraces all activities which are an integral and indispensable part of the principal activities." *IBP*, 546 U.S.

at 29–30 (internal quotation marks and citation omitted). An activity is "integral and indispensable" to the principal activities an individual is employed to perform "if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing*, 135 S. Ct. at 517. In other words, an activity is integral and indispensable to the work an employee was hired to do if it is a component of that work, and he cannot complete the work without it. *Id.*

Applying these terms, the *Integrity Staffing* Court held that post-shift security screenings were neither the principal activity Amazon hired its employees to perform, nor "integral and indispensable" to that activity:

> To begin with, the screenings were not the "principal activity or activities which [the] employee is employed to perform." Integrity Staffing did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment to Amazon customers.

> The security screenings also were not "integral and indispensable" to the employees' duties as warehouse workers. . . . The screenings were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment. And Integrity Staffing could have eliminated the screenings altogether without impairing the employees' ability to complete their work.

*Id.* at 518 (citation omitted). The screenings were therefore "postliminary" to the employees' principal activities and excluded from compensation pursuant to the Portal-to-Portal Act.

Defendants contend the KWHA implicitly incorporates the Portal-to-Portal Act's exclusions, making *Integrity Staffing* strongly persuasive in resolving plaintiffs' state-law claims. The Vances counter that the KWHA does not include "preliminary" or "postliminary" language, and, as a result, its application should not turn on Portal-to-Portal Act cases like *Integrity Staffing*.

### B.

As a federal court applying state law, "we anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). "If the state supreme court has not yet addressed the issue," we render a prediction "by looking to all the available data." *Allstate Ins.*

*Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). Sources of relevant data include "the decisions (or dicta) of the Kentucky Supreme Court in analogous cases, pronouncements from other Kentucky courts," and regulatory guidance from the Kentucky Labor Cabinet and Department of Workplace Standards. *Hargis*, 785 F.3d at 195; *see also Whitewood v. Robert Bosch Tool Corp.*, 323 F. App'x 397, 401 (6th Cir. 2009) (consulting the KWHA's interpretive regulations).

In Kentucky, "the cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Beshear v. Haydon Bridge Co., Inc.*, 304 S.W.3d 682, 703 (Ky. 2010) (citation and brackets omitted). "The obvious place to start is with the language of the statute itself." *Members Choice Credit Union v. Home Fed. Savings and Loan Ass'n*, 323 S.W.3d 658, 660 (Ky. 2010). If the Kentucky Act is "similar to a Federal Act," its language "will normally be interpreted consistent with federal law." *Starr v. Louisville Graphite, Inc.*, No. 2014-CA-000620-MR, 2016 WL 1612940, *3 (Ky. Ct. App. Apr. 22, 2016); *see also Ammerman v. Bd. of Educ. of Nicholas Cty.*, 30 S.W.3d 793, 797–98 (Ky. 2000) (holding the Kentucky Civil Rights Act "should be interpreted consistently with" Title VII).

Plaintiffs agree the KWHA is similar to its federal counterpart—so much so that the Kentucky Supreme Court considers it "Kentucky's analogue to the Fair Labor Standards Act." *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n*, 212 S.W.3d 89, 92 (Ky. 2006). Both statutes require employers to compensate employees "at a rate not less than one and one-half times the regular rate" for a "workweek longer than forty hours." *Compare* 29 U.S.C. § 207(a)(1), *with* Ky. Rev. Stat. § 337.285(1) (using nearly identical language). Both also define "hours worked," and the related concepts of "suffered or permitted to work," "waiting time," "on-call time," "rest and meal periods," and "travel time" in comparable language. *Compare* 803 Ky. Admin. Regs. 1:065(1)–(7), *with* 29 C.F.R. §§ 785.11–.19, 785.33, 785.35, *and* 785.38. Hence, when the dispute concerns one of these "substantially similar" provisions, and state case law is lacking, the Kentucky Supreme Court looks to federal precedent for interpretive guidance. *City of Louisville*, 212 S.W.3d at 95.

Federal law is less useful, however, when the dispute concerns a "distinct structural difference" in state law, as the Kentucky Supreme Court explained in *City of Louisville*. *Id.*

Like the FLSA, the KWHA's overtime requirement applies only to employees, a group that includes any person "suffered or permitted to work for an employer, *but* [*does*] *not include*" those employed in a supervisory capacity. Ky. Rev. Stat. § 337.285(a)(2) (emphasis added). *City of Louisville* examined who bore the burden to prove (or disprove) that a plaintiff seeking overtime is in fact an overtime-eligible "employee"—as opposed to a "supervisory" worker excluded from the overtime requirements. 212 S.W.3d at 92–95.

The Kentucky Court of Appeals allocated that burden to the employer. *Id.* at 95. It reasoned that KWHA claimants are presumed to be "employees," unless their employer rebuts this presumption—just as it would have to in the FLSA context. *Id.* Indeed, under federal precedent, "the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974) (footnote omitted).

But the Kentucky Supreme Court reversed. Rejecting the Court of Appeals' reasoning, it explained:

> Under the FLSA, all employees are automatically entitled to time-and-a-half overtime pay unless those employees fall under a specified "exemption." 29 U.S.C. § 207(a)(1). One of these specified exemptions under the FLSA is "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1) ("Exemptions"). *In contrast, individuals who are employed in a bona fide supervisory capacity are not "employees" at all under KRS 337.285, and thus, are completely excluded from the statute's scope*.

*City of Louisville*, 212 S.W.3d at 95 (emphasis added). This "distinct structural difference" meant that, unlike a federal claimant, a KWHA claimant must prove he is an "employee" as part of his prima facie case. *Id.* at 94. Federal cases requiring "'exemption[s]' [to] be narrowly construed against the employer" are inapplicable to KWHA claimants for much the same reason—the Act's exclusion of supervisory staff from the definition of "employee" "does not constitute an exemption." *Id.*

The Vances argue that the absence of language referring to "principal activity" or "preliminary" and "postliminary" acts in the KWHA is akin to the "distinct structural difference" identified in *City of Louisville*, making *Integrity Staffing* inapposite. Further, they note that the

Kentucky legislature expressly adopted the Portal-to-Portal Act's "good faith" exception, which grants a court discretion to deny liquidated damages against an employer who acted "in good faith," with "reasonable grounds for believing that his or her act or omission was not a violation" of the FLSA. 29 U.S.C. § 260; *see also* Ky. Rev. Stat. § 337.385(2). Plaintiffs reason that the adoption of this portion of the Act, but not its "preliminary" and "postliminary" provisions, demonstrates the General Assembly's intent to depart from the excluded terms. "It is a familiar and general rule of statutory construction that the mention of one thing implies the exclusion of another." *Fox v. Grayson*, 317 S.W.3d 1, 8 (Ky. 2010) (citation omitted); *but see Commonwealth v. Johnson*, 423 S.W.3d 718, 723 (Ky. 2014) (characterizing the cannon *expressio unis* as "a narrow rule of last resort" in statutory interpretation).

Yet, plaintiffs do not speak to the main distinction between *City of Louisville* and the present action: the Kentucky Supreme Court determined the burden of proving employee status lay with the claimant based on an express, *affirmative departure* from the FLSA. Here, we do not have an affirmative departure. We have only the state legislature's failure to explicitly incorporate certain Portal-to-Portal Act terms; or more accurately, a departure by omission.

To be sure, Kentucky courts are bound by "the words [the General Assembly] used in enacting the statute"; they are not free to "surmis[e] what may have been intended but was not expressed." *Travelers Indem. Co. v. Reker*, 100 S.W.3d 756, 765 (Ky. 2003) (citation omitted). "Admittedly," then, "when a legislature's enactment departs from the language of a model act, it usually does so to express an intention different from the model act." *Members Choice Credit Union*, 323 S.W.3d at 663 (internal quotation marks and citation omitted). "But," Kentucky's Supreme Court has cautioned that "this approach is primarily relevant when the legislature is working in a vacuum, building first principles in an area of the law." *Id.* Here, the Kentucky General Assembly was not "working in a vacuum, building first principles of [wage and hour] law." *Id.* It drafted the KWHA in 1974, decades after Congress enacted the 1947 Portal-to-Portal Act. "Where such context exists, it does not automatically follow that the legislature meant anything by a departure from the model act." *Id.* (recognizing that at the time of the amendment at issue, "credit unions were already regulated . . . in Kentucky and had been so for over sixty years"). Rather, "absent a clear indication that the General Assembly considered the

revision and deliberately rejected it . . . legislative inaction is a weak reed upon which to lean, and a poor beacon to follow in construing a statute" that borrows some, but not all, of a model act's provisions. *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 560 (Ky. 2011) (citation, brackets, and ellipsis omitted).

Model-act-based statutes are better interpreted "with reference to the circumstances existing at the time of passage."[1] *Members Choice Credit Union*, 323 S.W.3d at 663 (quoting *United States v. Wise*, 370 U.S. 405, 411 (1962)). These circumstances may include an awareness of the conditions that precipitated the Portal-to-Portal Act—particularly the "flood of litigation" provoked by the Supreme Court's early permissive rulings. *Integrity Staffing*, 135 S. Ct. at 516. "Further, our rules of statutory construction presume that the legislature is aware of the state of the law at the time it enacts a statute, concluding judicial construction of prior enactments." *St. Clair v. Commonwealth*, 140 S.W.3d 510, 570 (Ky. 2004). If the Kentucky General Assembly intended to expose employers to the type of liability Congress foreclosed in the Portal-to-Portal Act, one may reasonably assume it would have done so affirmatively— especially given its willingness to affirmatively depart from the FLSA in other instances. *See, e.g., City of Louisville*, 212 S.W.3d at 95; *compare also* Ky. Rev. Stat. § 337.065(3) (prohibiting mandatory tip-pooling), *with* 29 U.S.C. § 203(m) (specifying that it does not prohibit tip-pooling); *and* Ky. Rev. Stat. § 337.050(1) (requiring overtime pay for hours worked on the seventh consecutive day of the work week), *with* 29 U.S.C. § 207 (including no such requirement). Thus, "absent a clear indication that the General Assembly considered the revision and deliberately rejected it," *Shawnee Telecom*, 354 S.W.3d at 560, we cannot conclude that the lack of Portal-to-Portal Act language demonstrates legislative intent to exclude its compensation limits from Kentucky's wage and hour laws.

---

[1]Relevant circumstances include looking to the prior act that the new legislation amends. *See Members Choice Credit Union*, 323 S.W.3d at 663. Looking to the prior act in this case, however, is not instructive. Before 1974, Ky. Rev. Stat. Chapter 337 codified the Women and Minors Employment Act, "a comprehensive statutory scheme establishing procedures to ensure that women and minors were neither overworked nor underpaid." *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 359 (Ky. 2005). The Kentucky General Assembly repealed the age- and sex-specific provisions regarding minimum wage and working hours as part of the 1974 revision. "In their place, it enacted statutes adopting the minimum wage mandated by the federal Fair Labor Standards Act," including the overtime and rest period requirements. *Id.* at 360. The parties point to no legislative history elucidating whether the General Assembly intended to incorporate the Portal-to-Portal Act in the revised law.

Kentucky's Commissioner of Workplace Standards, whom the General Assembly has empowered to issue regulations "defining and governing" the KWHA, *see* Ky. Rev. Stat. § 337.295, agrees.  The Labor Cabinet and Department of Workplace Standards enjoy "wide discretion" in interpreting the state's law, *Ky. Mun. League v. Commonwealth Dep't of Labor*, 530 S.W.2d 198, 201–02 (Ky. Ct. App. 1975), and their regulations serve as the framework for its application.  *See City of Louisville*, 212 S.W.3d at 92–93, 96.

Despite the lack of "preliminary" and "postliminary" language in the KWHA, the Commissioner has nevertheless concluded that the Portal-to-Portal Act's exemptions are part of that framework.  Kentucky's administrative regulation regarding "Travel Time," is the most significant example.  It states:

> (1) General.  The principles which apply in determining whether or not time spent in travel is working depend upon the kind of travel involved.
>
> (2) Home to work.  An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home-to-work travel which is a normal incident of employment.  This is true whether he works at a fixed location or at different job sites.  Normal travel from home to work is not worktime.
>
> (3)  Travel that is worktime.  *Time spent by an employee i[n] travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked.*  Where an employee is required to report at a meeting place to receive instructions or to perform other work there, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked.

803 Ky. Admin. Regs. 1:065(7) (emphasis supplied).

Both the phrase and concept of a "principal activity" are taken from the text of the Portal-to-Portal Act.  *See* 29 U.S.C. § 254(a).  Moreover, the emphasized language is identical to the Department of Labor's regulations implementing the Portal-to-Portal Act.  *See* 29 C.F.R. § 785.38 ("Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the work day, must be counted as hours worked.").  The federal regulations also discuss "[h]ome to work" travel in the same terms as subsection (2) of the Kentucky regulation.  *See* 29 C.F.R. § 785.35; 803 Ky. Admin. Regs. 1:065(7)(2).

The inclusion of this language in a regulation concerning "Travel Time" strengthens the Portal-to-Portal Act connection, which has employer liability for "walking, riding [and] traveling to and from the actual place of performance" squarely at its focus. 29 U.S.C. § 254(a)(1). Congress enacted the FLSA amendment in response to decisions deeming certain travel time compensable regardless of whether it occurred before or after an employee's "principal activities." As the Supreme Court explained in *Integrity Staffing*:

> If the [integral and indispensable] test could be satisfied merely by the fact that an employer required an activity, it would sweep into "principal activities" the very activities that the Portal–to–Portal Act was designed to address. The employer in *Anderson*, for instance, required its employees to walk from a timeclock near the factory gate to a workstation so that they could begin their work, but it is indisputable that the Portal–to–Portal Act evinces Congress' intent to repudiate *Anderson*'s holding that such walking time was compensable under the FLSA. A test that turns on whether the activity is for the benefit of the employer is similarly overbroad.

135 S. Ct. at 519 (quotation marks and citation omitted). The Portal-to-Portal Act after all "does not purport to change th[e] Court's earlier descriptions of the terms 'work' and 'workweek.'" *IBP*, 546 U.S. at 28. It abrogates *Anderson* because "the walking [in that case] preceded the employees' principal activity; it occurred before the workday began." *Id.* at 35. But walking and travel remain compensable under the Act so long as they occur between two principal activities; that is, "after the workday begins and before it ends." *Id.*; *see also Sandifer*, 134 S. Ct. at 875 (explaining that under the "continuous workday rule," compensable time comprises "the period between commencement and completion on the same workday of an employee's principal activity or activities, whether or not the employee engages in work throughout all that period" (citation, ellipsis, and alteration omitted)). By specifying that "travel from job site to job site during the workday" is compensable as a "principal activity," while travel to and from home is not, 803 Ky. Admin. Regs. 1:065(7), incorporates this same limitation.

Kentucky's wait-time regulation, 803 Ky. Admin. Regs. 1:065(3), imports the same Portal-to-Portal Act rule, and is also drawn from regulations interpreting the federal amendment, *see* 29 C.F.R. §§ 785.14–16. Both sets of regulations explain that "waiting is an integral part of the job" only when the employee is "engaged to wait"—meaning his workday has begun and he is anticipating some further principal activity, such as a stenographer waiting to take dictation or

a firefighter waiting for a call. *See* 803 Ky. Admin. Regs. 1:065(3)(2); 29 C.F.R. § 785.15. Thus, for example, "[b]ecause doffing gear that is 'integral and indispensable' to employees' work is a 'principal activity' under the statute, . . . time spent waiting to doff is not affected by the Portal-to-Portal Act, and is instead covered by the FLSA." *IBP*, 546 U.S. at 40. Comparatively, "'when performed under the conditions normally present,' activities including 'checking in and out and waiting in line to do so . . . and waiting in line to receive pay checks'" are noncompensable preliminary, or postliminary acts that do not occur between principal activities. *Integrity Staffing*, 135 S. Ct. at 518 (citation omitted); *see also IBP*, 546 U.S. at 40–41 (discussing waiting to don protective gear as a noncompensable preliminary activity). Plaintiffs rightly note that whether wait time "belongs to and is controlled by the employer" is also part of the inquiry. *See* 803 Ky. Admin. Regs. 1:065(3)(2); 29 C.F.R. § 785.15. But again, a test that "turns [solely] on whether the activity is for the benefit of the employer is . . . overbroad." *Integrity Staffing*, 135 S. Ct. at 519. "If the [integral and indispensable] test could be satisfied merely by the fact that an employer required an activity, it would sweep into 'principal activities' the very activities the Portal-to-Portal Act was designed to address." *Id.*

Plaintiffs' primary response to the term "principal activity" in 803 Ky. Admin. Regs. 1:065(7) is to ignore it. They point out that the state regulations "say absolutely nothing about any carve-outs for preliminary or postliminary activities that would otherwise constitute work." True enough—the regulations do not mention "preliminary" or "postliminary" activity. But integrating the Portal-to-Portal Act into the KWHA's regulatory scheme would likely require use of the phrase "principal activity," because it is the main Portal-to-Portal Act term the Supreme Court has defined: the work an employee is hired to perform, and any activity which is integral and indispensable to that work. *See Integrity Staffing*, 135 S. Ct. at 517–18. Preliminary and postliminary activities, by contrast, are defined in the negative. They are categorized as non-compensable conduct occurring before and after principal activities *precisely because they do not meet the definition* of "principal activity." *See id.* at 518–19 (holding that undergoing security screenings is a postliminary activity because it is neither "the principal activity . . . the employee is required to perform," nor "integral and indispensable" to that work (brackets and citation omitted)). Reference to "principal activity" is therefore not weakened by the failure to mention "preliminary" or "postliminary" conduct.

Where the KWHA's regulations are "substantially similar to" their federal equivalents, and there is no state case law on point, the Kentucky Supreme Court relies on federal decisions to aid in their application. *City of Louisville*, 212 S.W.3d at 95–100. We conclude it would do the same here and would agree that the KWHA incorporates the Portal-to-Portal Act's compensation limits on preliminary and postliminary activities. *Integrity Staffing* is therefore on point.

C.

Having stipulated to dismiss their FLSA claims after the Supreme Court's decision, plaintiffs have all but agreed that it controls. The Vances alleged defendants hired them as "warehouse employees [to] perform tasks related to [] merchandise," such as "receiving deliveries"; "transporting merchandise"; "processing it for shipping; processing returns; and refurbishing returned items." Post-shift security screenings are "not the 'principal activity or activities'" they were hired to perform and are "not 'integral and indispensable' to the[ir] . . . duties as warehouse workers." *Integrity Staffing*, 135 S. Ct. at 518 (quoting 29 U.S.C. § 254(a)(1)). Further, plaintiffs cannot reasonably characterize "waiting in line [and] walking through a metal detector" as "travel from jobsite to jobsite," 803 Ky. Admin. Regs. 1:065(7)(3), or as compensable "wait time," 803 Ky. Admin. Regs. 1:065(3), because they do not perform or anticipate performing other principal job activities after the screening.

Accepting plaintiffs' "well-pleaded allegations" as true, we conclude that Amazon and Kelly Services are "nevertheless clearly entitled to judgment." *Wurzelbacher*, 675 F.3d at 583 (citation omitted). The district court therefore did not err in granting defendants judgment on the pleadings.

V.

For these reasons, we affirm the district court's judgment.