NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0583n.06

No. 16-5990

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| STEVEN ABELL, ET AL., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| SKY BRIDGE RESOURCES, LLC, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE: BATCHELDER, ROGERS, and WHITE, Circuit Judges.**

WHITE, J., delivered the opinion of the court in which BATCHELDER and ROGERS, JJ., joined except as to the issue of the Kentucky Wage and Hour Act discussed in Part IV.B.2. BATCHELDER, J. (pp. 26–29), delivered the opinion of the court with regard to the Kentucky Wage and Hour Act, in which ROGERS, J., joined, and WHITE, J. dissented in Part IV.B.2 of her opinion.

**HELENE N. WHITE, Circuit Judge.** Steven Abell, Rebecca Blades, Michael Hartman, Joshua Jackson, Adam Lardner, Michael Marrero, Kishma McCray, Christopher Pasiuk, Robert Pugh, Chad Spaulding, James Webb, Timothy Wemes, and Michael Woolard (Plaintiffs) are all former employees of Sky Bridge Resources, LLC (Sky Bridge). Plaintiffs allege Sky Bridge breached their employment contracts and violated both the Fair Labor Standards Act (the FLSA) and the Kentucky Wage and Hour Act (the KWHA) by undercompensating them for travel time. The district court granted summary judgment to Sky Bridge, and Plaintiffs appeal. We **REVERSE IN PART**, **AFFIRM IN PART**, and **REMAND** for further proceedings.

## I. BACKGROUND

### A. Facts

Sky Bridge is a recruiting firm with an office in Louisville, Kentucky, that provides information technology consultants and technicians to help clients design and manage their computer systems. One of those clients is Kindred Healthcare (Kindred), a company that operates hospitals and other medical facilities. Sky Bridge hired Plaintiffs to provide contract services at Kindred facilities. Plaintiffs' jobs involved travel to locations around the country, typically, but not always, by air, with Plaintiffs usually departing Louisville early Monday morning and returning to Louisville Friday afternoon or evening.

Before beginning their work for Sky Bridge, each plaintiff signed a substantially identical employment contract (the Employment Agreement). In relevant part, the template Employment Agreement provides:

> 2. **Reporting of Hours** – You agree to submit to the SKYBRIDGE office . . . completed time records . . . approved and verified by a Client supervisor, indicating the number of hours worked . . . . You understand and agree that in the absence of complete and accurate time records, SKYBRIDGE cannot accurately determine the number of hours worked and your corresponding wages . . . . You acknowledge SKYBRIDGE's policy and practice of mandating recordation of all hours worked. SKYBRIDGE does not permit "off the clock" work or any similar practice of not recording hours worked . . . .

> 3. **Compensation** – In consideration of your services, SKYBRIDGE agrees to pay you at the following rate of **$XX.00** for hours worked (as reflected on approved and verified time records) effective on the day you report to work at the Client and ending on the day of termination, or discharge of employment, regardless of cause or reason for discharge or termination. Except as specifically set forth in this Agreement or any properly executed Addendum to this Agreement, you acknowledge and agree that you are not entitled to any other compensation or benefits (including, but not limited to, vacation, holidays or personal leave) from SKYBRIDGE.

(R. 69-17, PID 443–44 (emphasis in original).) Plaintiffs' hourly wages varied from $18.00 to $22.00 per hour and each individual plaintiff's wage was specified in that plaintiff's employment

agreement. The parties agree that the template Employment Agreement accurately reflects the terms of each individual contract in all other relevant respects.

Sky Bridge paid its employees time-and-a-half for hours it considered "Hours Worked" over 40 hours in a workweek, i.e., overtime. Further, Sky Bridge maintained a policy that employees working under Kindred contracts would be paid half of their usual rate for "any time spent flying on airplanes" from their home cities to their work site, time which Sky Bridge referred to as "Hours Traveled." Plaintiffs logged "Hours Worked" and "Hours Traveled" separately on their timesheets.

Abell, Lardner, Pasiuk, Webb, and Woolard acknowledged they were told of the policy before they signed the Employment Agreement. Hartman, Jackson, Marrero, McCray, and Pugh testified they were not told about the travel compensation policy before they signed the Employment Agreement, and instead learned about it during their orientation or soon after starting work. Blades and Wemes do not remember when they learned about the travel compensation policy. Spaulding testified he was paid his full hourly wage for "Hours Traveled" for "a couple of months" or "at least four paychecks" after he started his employment, but was then told Sky Bridge was changing its policy and "cutting our travel time pay to where it's only half." (Spaulding Dep. Tr., R. 69-13, PID 402–03.)

Eventually, the travel-compensation policy became a topic of conversation among the plaintiffs. Abell and Pasiuk—both of whom knew about the policy before they signed the Employment Agreement—complained about the policy, but only after working for Sky Bridge for some length of time. McCray—who did not learn about the policy until after she started working for Sky Bridge—was unhappy but remained silent out of fear of being fired for complaining. Spaulding, alone among the plaintiffs, testified that he was promised he would be

paid his full wage for travel time, that he actually was paid his full wage for a period of time, and that, after Sky Bridge began paying only half wage for travel time, he complained, but then dropped the matter because it put him on "bad terms" with his boss. (*Id.*) For the other plaintiffs, however, there is no evidence of dissatisfaction with the travel-compensation policy prior to the filing of this suit.

## B. Procedural History

Plaintiffs filed this suit alleging breach of contract and violations of the FLSA and KWHA in September 2013, and an amended complaint in November 2013. Sky Bridge filed a motion to dismiss. Relying on 29 C.F.R. § 785.39, which provides that "[t]ravel away from home is clearly worktime when it cuts across the employee's workday," the district court dismissed Plaintiffs' claims for "compensation for travel time outside regular working hours . . . under the FLSA." (R. 35, PID 149; R. 40, PID 168 (correcting an error in the original order addressing the motion to dismiss)). But Plaintiffs' breach-of-contract and KWHA claims survived, as the district court found that they were separate from the FLSA claim and had not been addressed by Sky Bridge's motion to dismiss.

Further amended complaints followed, including repleaded FLSA claims. After discovery, Sky Bridge filed a motion for summary judgment in November 2015. Plaintiffs responded with their own motion for partial summary judgment. The district court denied Plaintiffs' motion and granted Sky Bridge's motion.

In addressing Plaintiffs' breach-of-contract claim, the district court found the Employment Agreement was silent as to how much Plaintiffs should have been paid for travel time. Considering "[t]he surrounding circumstances" and the conduct of the parties, the district court concluded that "Sky Bridge and the Plaintiffs interpreted their arrangement as providing an

hours travelled rate at half the rate as hours worked. Although the contract is silent as to the hours travelled policy, the Plaintiffs assented to these terms when they continued working at the half-rate for hours travelled." (R. 80, PID 552.) The court granted summary judgment to Sky Bridge on that basis.

As to the renewed FLSA claims, Plaintiffs conceded that in light of the court's earlier ruling, the only issue to be decided was whether, under the federal statute, they were entitled to "compensation at their contractual rate [i.e., full pay] for those hours spent traveling away from home during normal working hours." (R. 70-1, PID 479 (citing R. 35; R. 40) (internal quotation marks omitted).) The district court rejected that claim on the grounds that "Plaintiffs have not presented any evidence that Sky Bridge did not pay them for hours travelled away from home during normal working hours." (R. 80, PID 551.)

Finally, the district court found that the rules established by the FLSA and the KWHA were identical as applied to Plaintiffs, and granted summary judgment to Sky Bridge on Plaintiffs' state-law claims on that basis.

Plaintiffs filed a timely notice of appeal seeking review of the district court's summary judgment order. Plaintiffs do not appeal the district court's earlier ruling dismissing their FLSA claim for travel outside normal work hours.

## II. STANDARD OF REVIEW

We review a district court's decision granting summary judgment de novo. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015). "Summary judgment is appropriate if, examining the record and drawing all inferences in a light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 399 (6th Cir. 2004).

### III. BREACH OF CONTRACT CLAIMS

Plaintiffs assert the Employment Agreement unambiguously required Sky Bridge to pay them their full wages for travel time.[1]  Alternatively, they argue that the doctrine of *contra proferentem* requires us to resolve any ambiguities in their favor, or, at minimum, that any ambiguities should be resolved by a jury.  We disagree.

### A. Applicable Law

Because the parties agree that Kentucky law governs interpretation of the Employment Agreement we accept that this is so.  *See Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011); *see generally Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Under Kentucky law, "[t]o prove a breach of a contract, the complainant must establish three things:  1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Dearborn v. City of Frankfort*, ___ S.W.3d ___, No. 2014-CA-001801-MR, 2016 WL 7175265, at *3 (Ky. Ct. App. Dec. 9, 2016).

"The primary objective" of contract interpretation "is to effectuate the intentions of the parties."  *3D Enters. Contracting Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005) (citation omitted).  "The intention of parties to a written instrument must be gathered from the four corners of that instrument."  *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000) (citation omitted).  "The fact that one party may have intended different results . . . is insufficient to construe a contract at variance with its plain and

---

[1] Plaintiffs asserted below that Sky Bridge should have paid them for "all travel time—including time spent travelling to and waiting in airports," not just time actually spent in the air.  (R. 70-1, PID 478).  But Plaintiffs abandoned that claim because, in their own words, "no accurate records were kept of such time," and so "Plaintiffs are unable to prove their claims for those work hours."  (*Id.*)  Thus, the only "travel time" at issue is time spent in the air.

unambiguous terms." *Ky. Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 695 (Ky. 2016) (quotation omitted). And it is "undoubtedly a general principle of Kentucky contract law" that "'[e]xtrinsic evidence cannot be admitted to vary the terms of a written instrument in the absence of an ambiguous [agreement].'" *Prime Finish, LLC v. Cameo, LLC*, 487 F. App'x 956, 960 (6th Cir. 2012) (quoting *Hoheimer*, 30 S.W.3d at 178) (alterations in *Prime Finish*).

"A contract is ambiguous 'when its language is reasonably susceptible of different constructions.'" *Journey Acquisition–II, L.P. v. EQT Prod. Co.*, 830 F.3d 444, 452 (6th Cir. 2016) (quoting *Blevins v. Riedling*, 158 S.W.2d 646, 648 (Ky. 1942)).

The Kentucky Supreme Court instructs that:

> If an ambiguity exists, the court will gather, if possible, the intention of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written, by evaluating extrinsic evidence as to the parties' intentions.

*Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal quotation marks and citations omitted). The same is true when a contract is "silent on a vital matter." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002) (citations omitted). Under Kentucky law, "the interpretation of contracts is an issue of law for the court to decide," but at the same time, "if the writing is ambiguous, the factual question of what the parties intended is for the jury to decide." *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006) (citation omitted). The Kentucky Supreme Court also instructs that courts should apply the doctrine of *contra proferentem*: "when a contract is susceptible of two meanings, it will be construed strongest against the party who drafted and prepared it." *Spurlock v. Begley*, 308 S.W.3d 657, 660 (Ky. 2010) (citation omitted).

**B. Application of Law to Facts**

The parties agree that the Employment Agreement that appears in the record accurately reflects the terms of each individual plaintiff's contract. Thus, there is no dispute that there was a binding contract between each plaintiff and Sky Bridge, and we need not address the first element of the breach of contract claim. Similarly, Sky Bridge does not argue that if a breach occurred, there were no damages. So we need not address the third element either. The only issue is whether Sky Bridge breached the Employment Agreement by paying Plaintiffs only half their usual wages for hours spent traveling.

The Employment Agreement has two key operative provisions: (1) all "hours worked" are compensated at a fixed rate; and (2) aside from payment for "hours worked," Plaintiffs "are not entitled to any other compensation or benefits." (R. 69-17, PID 443–44.) The term "hours worked" is not defined, and the Employment Agreement makes no reference to travel or travel compensation.

1. <u>Vital Matter</u>

The first question is whether the Employment Agreement is either silent or ambiguous on a vital matter, because the answer to that question "will dictate how our interpretive analysis will proceed." *Frear*, 103 S.W.3d at 106–07. The district court implicitly concluded that travel compensation was a vital aspect of Plaintiffs' employment relationship with Sky Bridge. This conclusion is supported by one of Abell's timesheets, covering the last three weeks of March 2012, which appears in the record. Sky Bridge told the district court that this timesheet represents "typical work weeks," (R. 69-1, PID 284), and Plaintiffs agree it is "a representative example." (Appellants' Br. at 29.) The timesheet shows Abell logged 154 total hours over those three weeks. Of those hours, 26.5 were travel time, representing an average of 8.83 hours per

week and more than 17% of Abell's total hours. Given how much time Plaintiffs spent traveling, we have no doubt travel compensation was a vital part of Plaintiffs' employment relationship with Sky Bridge.

### 2. Silence or Ambiguity

The second question is whether the Employment Agreement is either silent or ambiguous as to travel compensation. Plaintiffs assert it is not, and reason as follows: (1) the Employment Agreement sets a flat rate for all "hours worked;" (2) the Employment Agreement states that Plaintiffs will not be compensated for anything other than "hours worked;" (3) Plaintiffs were required to travel as part of their jobs; (4) Plaintiffs were, in fact, compensated for travel time; (5) travel time must therefore be "hours worked;" and (6) thus, travel time should have been paid at the full rate set in the Employment Agreement. Plaintiffs further support this reasoning by arguing that "hours worked" unambiguously includes their travel time under both a plain-meaning interpretation and an interpretation informed by the FLSA and KWHA. We conclude, however, that the Employment Agreement is silent or ambiguous as to compensation for travel time, because "hours worked" does not unambiguously include travel time.

First, the second step in Plaintiffs' analysis is flawed. The Employment Agreement does not state that Plaintiffs will not be compensated for hours other than "hours worked"; it says that Plaintiffs "are not entitled to any other compensation or benefits." (R. 69-17, PID 444.) Plaintiffs attach the same meaning to both phrases, but the actual formulation creates ambiguity.

Plaintiffs next argue that contract terms are interpreted "by assigning language its ordinary meaning," *Ky. Shakespeare Festival*, 490 S.W.3d at 694, and that the ordinary meaning of "hours worked" includes travel time. Plaintiffs assert that "the Merriam Webster [sic] Online Dictionary" defines "work" as:

> the things that you do especially as part of your job; the labor, task, or duty that is one's accustomed means of livelihood; or a specific task, duty, function, or assignment often being a part or phase of some larger activity.

Plaintiffs do not provide a citation, and this is not the definition of "work" that currently appears in Merriam-Webster's online dictionary. *See* Work, Merriam-Webster, https://www.merriam-webster.com/dictionary/work (last accessed Sept. 29, 2017). Nonetheless, the relevant definitions of "work" offered there include "activity in which one exerts strength or faculties to do or perform something," "the labor, task, or duty that is one's accustomed means of livelihood," and "a specific task, duty, function, or assignment often being a part or phase of some larger activity," *id.*—definitions that approximate the one offered by Plaintiffs. Thus, Plaintiffs' plain-meaning interpretation—that travel time is included in "hours worked"—is plausible.

Plaintiffs' interpretation is not, however, the *only* plausible plain-meaning interpretation. The Employment Agreement actually uses "work" as a verb, not a noun, i.e. "hours worked." (R. 69-17, PID 444.) And, using Plaintiffs' preferred dictionary, the leading definitions of "work" as a verb are "to exert oneself physically or mentally especially in sustained effort for a purpose or under compulsion or necessity," "to perform or carry through a task requiring sustained effort or continuous repeated operations," and "to perform work or fulfill duties regularly for wages or salary." Work, Merriam-Webster, https://www.merriam-webster.com/dictionary/work (last accessed Sept. 29, 2017); *see also* Work, American Heritage Dictionary of the English Language (5th ed. 2016), *available at* https://ahdictionary.com/word/search.html?q=work (defining the verb "work" as "[t]o exert oneself physically or mentally in order to do, make, or accomplish something"). These definitions are compatible with Plaintiffs' position, but they also show that "work" can be

understood to involve exertion towards a particular task. That, in turn, means that time spent sitting on an airplane can be understood to fall outside the definition of "work." And, "[a] contract is ambiguous 'when its language is reasonably susceptible of different constructions.'" *Journey Acquisition–II*, 830 F.3d at 452 (6th Cir. 2016) (quoting *Blevins*, 158 S.W.2d at 648); *see Hackney*, 657 F. App'x at 572–73 (undefined term in an employment contract held to be ambiguous because of its "multiple reasonable meanings").

Plaintiffs also argue that the FLSA and KWHA remove any ambiguity in the term "hours worked" as it is used in the Employment Agreement. It is true that "implicitly included in the terms of contracts are the laws subsisting at the time and place of the making of the contract." *Corbin Deposit Bank v. King*, 384 S.W.2d 302, 304 (Ky. 1964) (citing *City of Covington v. Sanitation Dist. No. 1 of Campbell & Kenton Ctys.*, 301 S.W.2d 885, 888 (Ky. 1957)); *see Richmond Health Facilities v. Nichols*, 811 F.3d 192, 202 (6th Cir. 2016). However, Plaintiffs quote selectively from federal and state regulations. Those rules do not establish that all travel time is "hours worked." Rather, travel that involves an overnight stay is "hours worked" under federal law if it occurs "during normal working hours." 29 C.F.R. § 785.39. And such travel is "worktime" under Kentucky law only "when it cuts across the employee's workday." 803 Ky. Admin. Regs. 1:065 § 7(4). The Employment Agreement does not restrict travel to Plaintiffs' regular hours (indeed, it does not mention travel at all). Thus, reading the Employment Agreement together with the regulations implementing the FLSA and KWHA does not eliminate all ambiguity, because whether travel is "hours worked" or "worktime" depends on when the travel occurs.

Plaintiffs argue that even if the Employment Agreement is silent or ambiguous, we may not consider extrinsic evidence because any ambiguities must be construed against Sky Bridge,

the drafter of the contract. Kentucky courts do apply the doctrine of *contra proferentem* as a "maxim of contract interpretation," *McMullin v. McMullin*, 338 S.W.3d 315, 322 (Ky. App. 2011) (citing *B. Perini & Sons v. S. Ry. Co.*, 239 S.W.2d 964, 966 (Ky. 1951)), but "it is the last one which [a] court will apply, and then only if a satisfactory result cannot be reached by other rules of construction[]," *Elliott v. Pikeville Nat. Bank & Trust Co.*, 128 S.W.2d 756, 760 (Ky. 1939) (citation omitted); *Mudd v. Mudd*, No. 2004-CA-001118-MR, 2005 WL 2807042, at *3 (Ky. App. Oct. 28, 2005); *L.K. Comstock & Co. v. Becon Const. Co.*, 932 F. Supp. 948, 968 (E.D. Ky. 1994), *aff'd*, 73 F.3d 362 (6th Cir. 1995) (unpublished). Here, sufficient "extrinsic evidence as to the parties' intentions" is available, *Frear*, 103 S.W.3d at 106 (citations omitted), so there is no need to employ the doctrine of *contra proferentem*.

### 3. Consideration of Extrinsic Evidence

#### a. *Plaintiffs Other than Spaulding*

The extrinsic evidence at issue, and which the district court found dispositive, is the parties' own actions. *See A. L. Pickens Co. v. Youngstown Sheet & Tube Co.*, 650 F.2d 118, 120 (6th Cir. 1981) ("Under the doctrine of contemporaneous construction, courts are required to give great weight to the interpretation which the parties have placed on an ambiguous contract. The construction of the parties is best evidenced by their conduct with respect to the agreement.") (quoting *Billips v. Hughes*, 259 S.W.2d 6, 7 (Ky. 1953)). In granting summary judgment to Sky Bridge, the district court relied on the undisputed fact that each plaintiff worked under Sky Bridge's two-tiered travel compensation system for months or years. Further, other than Spaulding, who is addressed separately below, Abell and Pasiuk were the only plaintiffs who complained about the travel compensation policy, and both Abell and Pasiuk acknowledged that they knew about the travel compensation policy before they signed the Employment

Agreement. This is powerful evidence that Sky Bridge and Plaintiffs did not intend the Employment Agreement to provide full-wage compensation for travel time. At oral argument, Plaintiffs' counsel was not able to clearly explain what contrary evidence, aside from the Employment Agreement itself, Plaintiffs would present to a jury.

In their briefs, Plaintiffs correctly point out that Abell, Hartman, and Pasiuk testified at their depositions that until September or October 2011, Sky Bridge treated travel by car, e.g., from Louisville to a Kindred facility in Elkhart, Indiana, as "hours worked," and paid full wages. However, in the fall of 2011, the practice changed and Sky Bridge began treating travel by car as "hours traveled," paying only half wages. There is no evidence that any of the plaintiffs complained about this change or disputed Sky Bridge's authority to make it unilaterally. Further, there is no evidence any of the plaintiffs knew about the car-travel compensation policy when they signed the Employment Agreement, much less relied on it for their understanding of the Employment Agreement.[2] As with air travel, the only plausible inference to be drawn is that the parties did not intend for the Employment Agreement to set the rate of pay for travel by car.

Thus, for plaintiffs other than Spaulding, the extrinsic evidence is all in Sky Bridge's favor, and a reasonable jury could not conclude that the parties intended the Employment Agreement to set Plaintiffs' wages for time spent traveling by airplane.

*b. Spaulding*

Although neither side distinguishes any one plaintiff from the others, we cannot ignore that the evidence relevant to Spaulding's breach-of-contract claim is unique. Unlike his co-plaintiffs, Spaulding testified that when he started working for Sky Bridge, he was promised that he would be paid his full wage for travel time. Spaulding also testified that Sky Bridge actually

---

[2] Indeed, at least four of the plaintiffs—Blades, Jackson, Webb, and Woolard—did not start working for Sky Bridge until 2012.

did pay him his full wage for travel time for "a couple of months" after he was hired. (Spaulding Dep. Tr., R. 69-13, PID 402–03.) Further, according to Spaulding, a Sky Bridge employee told him that Kindred had never been so quick to approve a potential hire as it had been with him. Sky Bridge disputes that it promised Spaulding full pay for travel and attributes any actual payment of full wages for travel time to a clerical error. At the summary judgment stage, however, we are required to draw all reasonable inferences in Spaulding's favor. In light of the evidence specific to Spaulding, a reasonable jury could conclude that he and Sky Bridge did intend for "hours worked" in Spaulding's contract to include travel time, possibly because Sky Bridge wanted to ensure the hiring of a candidate who was particularly attractive to Kindred. We therefore reverse the grant of summary judgment as to Spaulding's breach of contract claim.[3]

## IV. STATUTORY CLAIMS

On appeal, Plaintiffs argue that the district court erred in rejecting their FLSA and KWHA claims because fact issues remain regarding whether they were required to perform work while traveling. Plaintiffs also argue that there is a factual dispute as to what their normal working hours were, and that Sky Bridge improperly failed to count travel hours towards the 40-hour threshold for overtime. Finally, Plaintiffs argue that Sky Bridge violated the KWHA by breaching the Employment Agreement. We address these arguments in turn.[4]

---

[3] We recognize that all Plaintiffs' contract claims are based on the same contractual language, and that all Plaintiffs rely on the alleged promise to Spaulding and the actual practice with regard to his pay. But Plaintiffs' choice to litigate collectively does not change the fact that they signed individual contracts with Sky Bridge—contracts we have found to be ambiguous as to travel compensation. Ambiguous language may be assigned a different meaning by different contracting parties employing that language at different times and under different circumstances. There is no evidence that any of the other plaintiffs were aware of Spaulding's circumstances when they signed their individual contracts, so those circumstances could not have informed their intent when signing those contracts.

[4] As noted above, Plaintiffs do not challenge the dismissal of their FLSA claim for compensation for time spent traveling outside of their normal work hours. Nor do they argue, as they did below, that the KWHA departs from the FLSA on this point.

**A. Clerical Work During Travel**

Plaintiffs assert they "often spent travel time working on behalf of the Defendant by completing clerical work," and that Sky Bridge violated the FLSA by not compensating them for this time as hours worked. (Appellants' Br. at 30–32.) It is true that "[a]ny work which an employee is required to perform while traveling must . . . be counted as hours worked." 29 C.F.R. § 785.41; *see Aiken v. City of Memphis*, 190 F.3d 753, 758 (6th Cir. 1999) ("an employee is entitled to payment for any work that the employer requires the employee to perform during the commute"). But, as Sky Bridge correctly points out, Plaintiffs did not make this argument below. Plaintiffs acknowledge as much, but argue that since the evidence relevant to their claim was before the district court, we should nevertheless consider the question. We decline to do so.

Generally, "an argument not raised before the district court is waived on appeal to this Court." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 615 (6th Cir. 2014) (citation omitted). Only when the waiver rule "'would produce a plain miscarriage of justice' or when there are exceptional circumstances" do we consider an argument not raised below. *Id.* (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)). Factors that "aid this Court in determining whether to consider a waived claim" include:

> 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear and beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Id.* (quoting *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996)).

Contrary to Plaintiffs' assertions, whether Plaintiffs were required to perform clerical work while traveling is entirely a question of fact, not one of law. *See Hayward*, 759 F.3d at

615. And Plaintiffs' only evidence to support this argument is Pugh's testimony that he worked while traveling on a plane on a "couple of occasions." (Pugh Dep. Tr., R. 69-12, PID 397.) That vague testimony does not make it "clear and beyond doubt" that Sky Bridge required Pugh to work while traveling, and Pugh's testimony says nothing at all about what the other plaintiffs were required to do. *Hayward*, 759 F.3d at 615. Further, Plaintiffs do not even attempt to argue that application of the waiver doctrine to this claim would constitute a miscarriage of justice. We decline to address this claim.

**B. Within-Regular-Duty Travel Hours and the Calculation of Overtime**

Plaintiffs' next two arguments are related. Plaintiffs assert that there is a factual dispute regarding what their regular working hours were, and that Sky Bridge violated the FLSA and the KWHA because their travel hours were not counted towards the 40-hour threshold for overtime. Sky Bridge answers that these arguments, too, were waived and that Plaintiffs' arguments fail on the merits because Plaintiffs were paid for their travel time. We agree that Plaintiffs waived the FLSA component of this claim. But the KWHA claim was clearly raised below.

1. FLSA

In Plaintiffs' brief in support of their own summary judgment motion, filed in November 2015, Plaintiffs stated: "there is no claim for more than 40 hours per week or for overtime, or time and a half, pursuant to the federal statute." (R. 70-1, PID 479.) This constitutes not just waiver, but an express abandonment of any FLSA-based overtime claims, including those based on a failure to count travel hours toward the overtime threshold. True, in their December 2015 response to Sky Bridge's summary judgment motion, Plaintiffs responded to Sky Bridge's assertion that Plaintiffs had not suffered any actual damages by arguing that Sky Bridge had improperly excluded travel hours when calculating Abell's overtime during one particular pay

period. However, Plaintiffs themselves downplayed the point, telling the district court that they were only responding to Sky Bridge's "superfluous" argument, and that "all of this is only the reduction of the parties' respective arguments to mathematics." (R. 72, PID 520.) Further, Plaintiffs never withdrew their prior disavowal of any FLSA overtime claims. Thus, Plaintiffs waived their FLSA-based claim for undercounted overtime.

## 2. KWHA[5]

Plaintiffs' KWHA-based overtime claim is a different story. Unlike their FLSA claim, in the KWHA count of the operative complaint, Plaintiffs specifically pled, among other things, a "failure to pay overtime . . . for time the Plaintiffs spent traveling," and an entitlement to "overtime and pay for time spent traveling . . . ." (R. 54, PID at 233.) Further, the same brief that disavowed any FLSA overtime claim makes clear that Plaintiffs sought to advance a KWHA-based overtime claim. For example, Plaintiffs explained that, "[p]ursuant to the state wage and hour statute, the Plaintiffs have claims for . . . time spent traveling away from home within regular working hours, [and] also for that time in excess of regular working hours and therefore for the overtime rate of time and a half . . . ." (R. 70-1, PID 480.) The district court did not address this claim, but that does not mean Plaintiffs waived it.

The majority affirms the grant of summary judgment in favor of Sky Bridge on the alternate basis that Plaintiffs' travel time falls outside their workday as a matter of law because, under 29 C.F.R. § 790.6(b), their workdays began when they arrived at their clients' places of business to perform their duties. I disagree.

First, Sky Bridge makes no such argument. Sky Bridge's theory of the case has been straightforward: "The parties in this case agreed that two different *types of work* (Hours Worked

---

[5] Part IV.B.2 constitutes Judge White's dissenting opinion.

and Hours Traveled) would be paid at different rates and the parties conducted themselves accordingly." (Reply in Support of Def.'s Mot. for Summ. J., R. 77, PID 545 (emphasis added); *see* Appellee's Br. at 40–41.) That position—that Plaintiffs' travel time was work—cannot be reconciled with the majority's view that Plaintiffs' workdays did not begin until they arrived at Sky Bridge's clients' worksites.

Further, Sky Bridge has never relied on the FLSA/Portal-to-Portal Act definition of "workday," and has never contended that the hours-long flights across the country it directed Plaintiffs to take were not part of their principal activities or workdays. In the brief supporting its summary judgment motion, Sky Bridge did not rely on the federal definition of "workday" to attack Plaintiffs' overtime claim. Instead, Sky Bridge argued that there was no need to decide what Plaintiffs' workday was, because even if "some of the Plaintiffs' travel time cut across their normal workdays and therefore should have been included in overtime calculations," Plaintiffs actually came out ahead. (R. 69-1, PID 282.)[6] In other words, while Sky Bridge did not concede that Plaintiffs' travel time was work for purposes of calculating overtime, it did not argue otherwise; rather, it argued that even if Plaintiffs' theory was correct, Plaintiffs had suffered no damages. Unsurprisingly then, since the parties did not raise the issue, the district court made no attempt to define Plaintiffs' workday or principal activities, and made no mention of the Portal-to-Portal Act or its implementing regulations. On appeal, Sky Bridge's substantive arguments regarding the KWHA overtime claim are similar to those it raised below.

---

[6] More fully, Sky Bridge pointed out that (1) Plaintiffs were paid *something* (their half-pay "Hours Traveled" rate) for all travel, even if it fell outside of regular hours, and (2) when Plaintiffs were paid overtime, they were paid at a higher overtime rate (1.5 times their full "Hours Worked" wage) than they were entitled to under Kentucky law (1.5 times a weighted average of their full "Hours Worked" wage and their half-pay "Hours Traveled" wage), even if (3) they were paid for fewer overtime hours than they should have been. Thus, according to Sky Bridge, Plaintiffs were actually paid more than they would have been if travel hours had been counted towards overtime and Plaintiffs had been paid according to the formula provided by Kentucky law. *See* Ky. Admin. Regs. 1:060 § 7(5).

Second, although the majority correctly observes that Kentucky courts look to federal precedent to interpret the KWHA, *see In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 852 F.3d 601, 610 (6th Cir. 2017), C.F.R. § 785.39 ("Travel away from home community"), not 29 C.F.R. § 790.6(b), is the federal law most analogous to 803 Ky. Admin. Regs. 1:065 § 7(4) ("Travel away from home"). Indeed, all agree that 29 C.F.R. § 785.39 and Ky. Admin. Regs. 1:065 § 7(4) are substantially identical as applied to the present case.

True, 29 C.F.R. § 790.6(b) defines "workday," as used in the Portal-to-Portal Act, as "in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities." But that qualification—"in general"—matters, because when federal courts must decide what an employee's "workday" is for purposes of assessing travel time under 29 C.F.R. § 785.39, they do not look to § 790(b) or apply the "principal activities"-based definition. Rather, they ask what the employee's typical work hours were. *See, e.g.*, *Bassett v. Tenn. Valley Auth.*, No. 5:09-CV-00039, 2013 WL 2902821, at *6 (W.D. Ky. June 13, 2013).[7] The Department of Labor's Wage and Hour Division uses the same approach. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (FLSA) (Sept. 21, 2004), 2004 WL 3177903; U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (July 10, 1962) (quoted in *Boll v. Fed. Reserve Bank of St. Louis*, 365 F. Supp. 637, 646 (E.D. Mo. 1973), *aff'd*, 497 F.2d 335 (8th Cir. 1974); *accord* Les A. Schneider & J. Larry Stine, 1 Wage and Hour Law

---

[7] Further examples include: *Flynn v. Special Response Corp.*, No. CIV.A. MJG-13-3321, 2014 WL 5088259, at *3 (D. Md. Oct. 8, 2014); *Dekker v. Constr. Specialties of Zeeland, Inc.*, No. 1:11-CV-252, 2012 WL 726741, at *4 (W.D. Mich. Mar. 6, 2012); *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 917–18 (D. Minn. 2010); *Lee v. City of Ark.*, No. 4-09-CV-00243-GTE, 2010 WL 2491425, at *4 (E.D. Ark. June 17, 2010); *Mendez v. Radec Corp.*, 232 F.R.D. 78, 86–87 (W.D.N.Y. 2005) (subsequent history omitted); *Troutt v. Stavola Bros.*, 905 F. Supp. 295, 301 (M.D.N.C. 1995), *aff'd*, 107 F.3d 1104 (4th Cir. 1997); *Boll v. Fed. Reserve Bank of St. Louis*, 365 F. Supp. 637, 646 (E.D. Mo. 1973), *aff'd*, 497 F.2d 335 (8th Cir. 1974). Research does not reveal any cases in which a court applying 29 C.F.R. § 785.39 defined "workday" by reference to 29 C.F.R. § 790(b) or by inquiring into an employee's principal activities.

§ 6:38 (Explaining that when an employee travels to another city for more than 24 hours, "travel time is compensable when it occurs during the employee's regular work hours." And, "[c]onversely, travel time outside the regularly scheduled hours is not compensable.") (footnotes and citations omitted).

Thus, to the extent federal law informs the interpretation of Kentucky law, the common-sense, factual definition of "workday" used when applying 29 C.F.R. § 785.39 should apply, not the "principal activities"-based definition set out in 29 C.F.R. § 790.6(b).

Third, application of the "principal activity" rule in this situation is inconsistent with Kentucky's regulatory scheme. Considering the Kentucky regulation at issue as a whole supports that the "principal activities"-based definition of "workday" found in 29 C.F.R. § 790.6(b) is not applicable in the travel context. The regulation states:

> (1) General. The principles which apply in determining whether or not time spent in travel is working depend upon the kind of travel involved.
>
> (2) Home to work. An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home-to-work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime.
>
> (3) Travel that is worktime. Time spent by an employee is[8] travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked.
>
> (4) Travel away from home. Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties.

803 Ky. Admin. Regs. 1:065 § 7.

---

[8] Presumably this is a typographical error, and the word should be "in," not "is."

Paragraph (1) establishes that "the kind of travel involved" is controlling, and paragraphs (2), (3), and (4) must each be read and understood on their own terms. Under this scheme, paragraphs (2) and (3) are clearly the Kentucky analogue to the FLSA/Portal-to-Portal Act's treatment of preliminary and postliminary travel (*e.g.*, 29 U.S.C. § 254(a)(2)). Indeed, that link was essential to the court's analysis in *In re Amazon.com*. *See* 852 F.3d at 614–15. Paragraph (2) only covers employees who return to their homes "at the end of the workday[.]" And paragraph (3) only deals with "[t]ravel that is worktime[,]" that is, travel that is "part of [the employee's] principal activity, such as travel from job site to job site during the workday[.]" Thus, the majority's understanding of "workday" makes sense for paragraphs (2) and (3)—the times an employee starts and stops performing the employee's principal activities on any particular day set the boundaries for the window of time within which travel on that particular day is worktime.

But "workday" must mean something different in paragraph (4) than it does in paragraphs (2) and (3), because otherwise paragraph (4) makes no sense. Paragraph (4) is intended to address employees for whom travel is *not* a principal activity; if an employee's principal activity includes overnight trips away from home, the employee's travel time will be worktime under paragraph (3). Further, paragraph (4) states that "[t]ravel away from home is worktime when it cuts across the employee's workday" making clear that some travel away from home may be worktime and some not. The inquiry is totally severed from the "principle activity" inquiry and tied to the temporal aspect of workday. During those usual working hours, "[t]he employee is simply substituting travel for other duties." For paragraph (4) to make sense,

"workday" in that paragraph must have a time-bound meaning other than when the employee arrives at the work location on that particular day to perform the employee's primary duties.[9]

In borrowing from federal law to interpret Kentucky law, we should not borrow selectively. Instead, we should consider all relevant aspects of the Portal-to-Portal Act; and a key part of the act is that, as Sky Bridge itself acknowledges, "activities otherwise noncompensable are considered compensable if they are normally paid as part of an employer's custom or practice." (Appellee's Br. at 34 (citing 29 U.S.C. § 254(b)(2)).) Further, when travel is compensable "by custom or practice . . . such traveltime must be counted in computing hours worked." 29 C.F.R. § 785.34. And "[h]ours worked in excess of the statutory maximum in any workweek are overtime hours under the [FLSA]." *Id*. § 778.101. Thus, because Sky Bridge had a custom or practice of compensating Plaintiffs for certain travel time (hours spent in airplanes), those hours should have been counted towards the accumulation of overtime under federal law. Finally, nothing in the KWHA or its implementing regulations is inconsistent with the federal "custom or practice" rule. Thus, to the extent federal law informs the interpretation of Kentucky law, it provides that travel hours for which Sky Bridge agreed to compensate Plaintiffs are counted as worktime for purposes of calculating overtime.

The record does not allow us to determine whether Sky Bridge actually violated the KWHA. Nor can we say whether Plaintiffs were harmed by any such violation, or whether, as Sky Bridge asserts, Plaintiffs suffered no damages because they "were routinely paid a higher overtime rate than they were owed," and the higher rate made up for any undercounting of hours.

---

[9] That is not to say the employee's workday must be fixed for all time. Month-to-month or week-to-week variations are not problematic. Nor is an irregular schedule, e.g., Mon-Wed 8am to 5pm; Thurs 10am-7pm; Fri 11am-10pm. *See Mendez v. Radec Corp.*, 232 F.R.D. 78, 86 (W.D.N.Y. 2005) (subsequent history omitted) (employees' normal working hours for determining whether travel time was worktime varied from project to project). But there must be some reference point against which to make the comparison.

(*See* Appellee's Br. at 37–38.) Kentucky law allows for different pay rates for time spent on different tasks, e.g., on-site work hours at full pay and within-regular-duty-hours travel time at half pay, provided the minimum wage is met. 803 Ky. Admin. Regs. 1:060 § 7(5). Thus, Plaintiffs' regular workday must be determined in order to evaluate their claim. Sky Bridge relies on an affidavit from George Cronen, its Business Operations Manager, for the proposition that all Plaintiffs had regular hours of 9:00 am to 5:00 pm. However, as Sky Bridge acknowledges, numerous Plaintiffs testified to different work schedules. Although Sky Bridge attacks this testimony as inconsistent and plagued by memory loss, and asserts that Cronen is "the most reliable witness," (Appellee's Br. at 36), courts do not weigh the evidence at the summary judgment stage, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).[10]

Once Plaintiffs' regular workday (which may not be the same for all the plaintiffs) is determined, Plaintiffs' overtime rates must be calculated using a weighted formula that accounts for the numbers of hours spent at different rates of pay. 803 Ky. Admin. Regs. 1:060 § 7(5).[11] The rates will be different for each plaintiff, based on his or her particular hourly wage, and will likely vary from week to week, because the overtime rate to which an individual plaintiff is entitled will change depending on the ratio of on-site work time (full pay) to within-regular-duty-hours travel time (half pay) in any given week. *See id.* On appeal, neither side makes any effort to set out the necessary calculations. And although each side moved for summary judgment on

---

[10] Sky Bridge's argument that Plaintiffs waived their right to dispute what their regular hours were is misplaced. This question is subsumed in Plaintiffs' KWHA claim that Sky Bridge undercompensated them for overtime, which, as noted above, Plaintiffs did not waive. Further, in its summary judgment brief, Sky Bridge asserted that the question of what Plaintiffs' regular hours were was "superfluous" because it had paid Plaintiffs something for travel time, and based its attack on Plaintiffs' KWHA claims on that and other grounds unrelated to the issue of what Plaintiffs' regular hours were. Thus, Plaintiffs had no obligation to further address the issue.

[11] In full: "Where an employee in a single workweek works at two (2) or more different types of work for which different nonovertime rates of pay have been established, his hourly rate for that week is the weighted average of such rates. That is, his total earnings are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs."

this claim, the briefing below is similarly unhelpful. The parties argued over a calculation for one pay period worked by Abell, but neither side addressed the rest of Abell's time at Sky Bridge or the hours worked by any other plaintiff.

Because the district court erred in granting summary judgment to Sky Bridge without adequately addressing Plaintiffs' KWHA claim, and further factual development is necessary, I would reverse the grant of summary judgment and remand for further proceeding on Plaintiffs' claim that Sky Bridge undercompensated them by failing to count within-regular-duty-hours travel time towards overtime calculations as required by Kentucky law.

### C.     Breach of the Employment Agreement as Violation of the KWHA

Finally, Plaintiffs argue that because Sky Bridge breached the Employment Agreement, it also violated the KWHA. Plaintiffs are correct that, under Kentucky law, "[n]o employer shall withhold from any employee any part of the wage agreed upon." Ky. Rev. Stat. § 337.060(1). Further, "wages" includes "any compensation due to an employee by reason of his or her employment, including salaries, commissions, vested vacation pay, overtime pay, severance or dismissal pay, earned bonuses, and any other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy." *Id.* § 337.010(1)(c)(1). Since there is a fact issue regarding whether Sky Bridge breached its contract with Spaulding, *see discussion* Section III.B.3.b *supra*, there is also a fact issue regarding whether, as to Spaulding, Sky Bridge violated the KWHA on this theory. And since the district court correctly granted summary judgment to Sky Bridge on the other plaintiffs' breach-of-contract claims, the district court was correct to grant summary judgment to Sky Bridge on this aspect of the other plaintiffs' KWHA claims.

## V. CONCLUSION

For those reasons, we **REVERSE** the grant of summary judgment to Sky Bridge on the breach-of-contract claim brought by Chad Spaulding and the derivative claim that Sky Bridge violated the KWHA by breaching its contract with Spaulding, **AFFIRM** the judgment of the district court in all other respects, and **REMAND** for further proceedings consistent with this opinion.

**ALICE M. BATCHELDER, Circuit Judge, with the opinion of the court as to Part IV.B.2.**[1] Plaintiffs also present a KWHA-based claim for overtime pay. Specifically, Plaintiffs argue that Sky Bridge violated the KWHA by underpaying them for the time they spent traveling to and from the locations of Sky Bridge's clients; furthermore, Plaintiffs argue that their travel time should have been included in calculations for overtime pay. (R. 54 at 233; R. 70-1 at 478-83.) Their arguments are unavailing.

Kentucky law requires that employees receive time-and-a-half pay for worktime above forty hours per week. Ky. Rev. Stat. § 337.285(1). Kentucky regulations further provide that "[t]ravel away from home is worktime when it cuts across the employee's workday." 803 Ky. Admin. Regs. 1:065 § 7(4). Accordingly, it is true that any travel time that fell within their regular workdays should have counted towards the accrual of overtime. But the record establishes that travel time for which Plaintiffs now seek overtime pay categorically falls outside of Plaintiffs' workday.[2]

Because Plaintiffs have asked us to apply state law, "we anticipate how [Kentucky's] highest court would rule in the case and are bound by controlling decisions of that court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005) (citation omitted). Unfortunately, Kentucky law is silent with respect to the meaning of "workday" in this context. *See* 803 Ky. Admin. Regs. 1:065 § 7. "Where the KWHA's regulations are 'substantially similar to' their federal equivalents, and there is no state case law on point, the Kentucky Supreme Court relies on federal decisions to aid in their applications." *In re Amazon.com, Inc.*, 852 F.3d 601, 615 (6th

---

[1] Judge Rogers joins this opinion.

[2] While this conclusion rests on arguments that neither party articulated, "[w]e may affirm the district court on any basis supported in the record." *Boler v. Earley*, 865 F.3d 391, 414 (6th Cir. 2017). Here, the materials included with the operative complaint and motions for summary judgment support our affirming the district court's grant of summary judgment in favor of Sky Bridge as to this issue.

Cir. 2017) (citing *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n*, 212 S.W.3d 89, 95-100 (Ky. 2006)) (holding that the KWHA incorporates the compensation limits on preliminary and postliminary activities under the FLSA as amended by the Portal-to-Portal Act).

Because Kentucky law provides no clear definition of "workday," we turn to federal law. The federal regulation most analogous to 803 Ky. Admin. Regs. 1:065 § 7 is 29 C.F.R. § 785.39. In both regulations, "[t]ravel that keeps an employee away from home overnight is travel away from home." 29 C.F.R. § 785.39; 803 Ky. Admin. Regs. 1:065 § 7(4). Both regulations further state that travel away from home should be classified as compensable worktime when that travel "cuts across the employee's workday." 29 C.F.R. § 785.39; 803 Ky. Admin. Regs. 1:065 § 7(4).

A common-sense definition of "workday" is that period of time during which an employee performs the activities that he was hired to perform. *See Franklin v. Kellogg Co.*, 619 F.3d 604, 618 (6th Cir. 2010). Our use of such a common-sense definition of workday is supported by 29 C.F.R. § 790.6(b), in which the U.S. Department of Labor defines "workday" as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. § 790.6(b). The regulation continues, "If an employee is required to report at the actual place of performance of his principal activity[3] at a certain

---

[3] The phrase "principal activity" is taken from the Portal-to-Portal Act. *See* 29 U.S.C. § 254(a). The Supreme Court "has consistently interpreted the term principal activity or activities to embrace all activities which are an integral and indispensable part of the principal activities." *Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 517 (2014) (internal quotation marks, brackets, and citation omitted). Activities which are integral and indispensable to the principal activities that employees are employed to perform are the "one[s] with which the employee cannot dispense if he is to perform his principal activities." *Id.*

While it may be that many courts ask a fact-based question when determining what an employee's typical workday is under 29 C.F.R. § 785.39, we see no substantive difference between asking that question and asking what the employee's principal activities were under 29 C.F.R. § 790.6(b). In other words, a common-sense test gets at the same thing as the principal-activities standard. As the Supreme Court explained in *IBP, Inc. v. Alvarez*, the Portal-to-Portal Act's principal-activities provision "does not purport to change [the] Court's earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday.'" 546 U.S. 21, 28 (2005).

specific time, his 'workday' commences at the time he reports there for work in accordance with the employer's requirement." *Id.*

The undisputed facts in the record before us indicate that Plaintiffs were employed to work as information technology consultants and technicians at the location of one of Sky Bridge's clients. Each of the employment contracts stated that Sky Bridge was employing Plaintiffs "in the capacity of [consultant or technician] commencing on [date] at its client, . . . for services with the latter for a temporary period, to perform such duties and for such hours of work as may be assigned to you during the term of service." (R. 69-17 at 443.) Under Section 3 of each contract, Sky Bridge "agree[d] to pay [Plaintiffs] at the following rate of [varying amounts] *for hours worked* (as reflected on approved and verified time records) *effective on the day you report to work at the Client* and ending on the day of termination, or discharge of employment." (*Id.* at 444 (emphasis added).) While many Plaintiffs testified that their "workdays" varied in terms of the number of hours worked, there does not appear to be any dispute in the record that Plaintiffs were employed to work as technicians at the location of one of Sky Bridge's clients. Therefore, their workdays began when they arrived at the client's location, and ended when they left for the day. Because the travel time in question occurred before or after their workdays, it cannot be found to have cut across their workdays, and, consequently, it is not compensable under the KWHA. *See* Ky. Admin. Regs. 1:065 §7(4); *see also* 29 C.F.R. § 785.39.

Moreover, that Sky Bridge regularly "compensated" Plaintiffs for their time spent traveling does not invalidate our conclusion. Federal regulation provides that an employer in the custom of paying employees for travel time may be responsible for including that travel time in overtime calculations. *See* 29 C.F.R. § 785.34. But the same regulation states that this only occurs when the custom or practice is "not inconsistent with an express contract." *Id.* Plaintiffs'

contracts expressly state that Sky Bridge agreed to pay them for the "hours worked . . . effective on the day [they] report[ed] to work at the Client," and that Plaintiffs were "not entitled to any other compensation or benefits." Even if the company paid for some of Plaintiffs' time spent traveling to and from the client's location, the contract makes clear that they were not entitled to that pay, and were instead due compensation only for the hours they worked once they arrived at the client's site.

Finding no genuine dispute of material fact regarding this issue, we affirm the district court's grant of summary judgment for Sky Bridge.